7513

### CRADDOCK v. WEEKLEY.

DEED—BILL OF SALE—FRAUD.—The deed and bill of sale from widowed and aged mother to her two daughters in consideration that they and their husbands take charge of and manage her business, pay off certain debts on the personal property, and take care of her during her life, sustained as being for good consideration and free from fraud.

*Way* v. *Insurance Co.,* 61 S. C., 501, *distinguished from this case.*

Before WATTS, J., Barnwell, May, 1909. Reversed.

Action by Mary E. Craddock against Annie E. Weekley, S. J. Hogg, G. Price Hogg and Jno. F. Weekley. From judgment for plaintiff, defendants appeal.

*Messrs. Bates & Simms,* for appellants.

*Messrs. R. C. Holman* and *B. T. Rice,* contra.

March 22, 1910. The opinion of the Court was delivered by      .

MR. JUSTICE HYDRICK. This action was brought to set aside a deed and bill of sale, executed by plaintiff on April 27, 1906, whereby she conveyed to her daughters, the defendants, Annie E. Weekley and Sallie J. Hogg, her homestead containing 134 acres, and certain personal property, consisting of a ginnery outfit, farm implements and mules, horses and cattle, reserving to herself, for life, the use thereof. The consideration expressed in the deed was love and affection for her said daughters, and their assumption and payment of certain debts due by her, and five dollars; that of the bill of sale was "the assumption and payment of certain debts, secured by mortgage on the property" therein described.

Plaintiff's husband had been dead some six or seven years. She had three daughters, the defendants and Mrs. John B. Cave, and one son, H. S. Craddock, who lived with her, and, after the death of his father, assumed the control and management of her affairs. The property described in the bill of sale, or at least a good part of it, was bought by her son, and he had secured the purchase price thereof by chattel mortgage, executed in his own name, though the property was used on the plaintiff's plantation, and, as contended by the defendants, claimed by her. This son died December, 1905, leaving some property, but not more than enough to pay his own debts—not including the mortgage on this property.

Left without any one to attend to her business, she appealed to her sons-in-law, who met at her house to discuss the situation, and decide what should be done. Cave said he would have nothing to do with it, and left.

Arrangements were then made whereby Mr. and Mrs. Hogg gave up their home, and went to live with plaintiff,

and Hogg and Weekley undertook the management of her plantation, of about 600 acres, with ten to twelve farms, and to settle up the estate of her son and pay his debts. They took out letters of administration upon his estate. A short time after his death, the creditors, who held the mortgage on the personal property, demanded payment. The mortgages were paid by Hogg and Weekley out of their own funds, and the property was left on plaintiff's plantation, as before.

The defendants say that plaintiff proposed to them that, as they were taking care of her, and attending to her business, and as Cave would render no assistance, she wanted to give them the part of her estate which she intended her deceased son to have, and that she proposed to execute the deeds herein mentioned. They say, also, that, besides the consideration expressed in the deed, they agreed to take care of her the balance of her life.

She testified that she did not consider the property covered by the mortgage hers, nor did she consider the debt hers, and that she told Weekley they could not take her land to pay her son's debts. But twice in her testimony she speaks of the horses and mules as hers. At one place she says: "I never had conversation with John Weekley or anyone else about turning over my horses and mules to pay H. S. Craddock's debts." She testified that she was induced to sign the deed and bill of sale by being told by Weekley that it was necessary for her to change her will, and that the paper she signed was another will. That the paper was not read over or explained to her. She is seventy-seven years old and cannot read, but her testimony bears evidence of a fair degree of intelligence.

On the other hand, the two witnesses to the instruments, who appear to be disinterested and intelligent men, whose characters and testimony are unimpeached, testified that both instruments were read over to her and explained by Weekley, before she signed them, and that she signed them

willingly, and appeared to understand what she was doing; and that, after she had signed them, she said to Weekley that she had forgotten one thing she wanted to put in the papers, that she wanted her grandson to have a horse, and Weekley replied that, as the papers were typewritten he did not want to change them, and promised that he would see to it that her grandson should have a horse, and she said she was satisfied with his promise. Weekley swears the same as the subscribing witnesses. These are corroborated by Mrs. Weekley, who was not in the room when the papers were signed, but heard them read and explained to her mother. She says also that plaintiff had told her before that she wanted to give her what she intended to give her son, and that she wanted to give her the place with the house on it. These witnesses are further corroborated by Mr. and Mrs. Hogg who testified to the previously expressed intention of the plaintiff to give Mrs. Weekley and Mrs. Hogg what she intended to give her deceased son.

The defendants all say that plaintiff seemed perfectly satisfied about the matter, until she visited her daughter, Mrs. Cave, who, plaintiff said, was the first to tell her the nature of the papers she had signed. She then became dissatisfied and brought this action to have them annulled.

The Circuit Court adjudged the deed and bill of sale void, because of the fiduciary relation existing between plaintiff and her grantees and their husbands, and their failure to prove the exercise of that good faith which such relation required in such a transaction. The Judge relied, in support of his conclusion, on the case of *Way* v. *Insurance Co.,* 61 S. C., 501, 39 S. E., 742.

A brief statement of the facts of that case will show that it was quite different from this case. Way had a policy of insurance on his life, payable to his wife. During his last sickness, she signed, at his request, an assignment of the policy to his estate, without any consideration. The assignment was witnessed by two of Way's brothers. After Way's

death Mrs. Way brought suit to set aside the assignment and recover the amount of the policy. She testified that she did not read the assignment; that it was not read or explained to her, and she did not know what she had signed until some time after her husband's death. Her testimony was uncontradicted. Neither of the witnesses to her execution of the assignment was examined. In that case the Court, at page 511, said: "The referee also finds, and the Circuit Judge sustains him in so finding, that there is no testimony to sustain the allegations of undue influence, fraud and misrepresentations, and, therefore, that the complaint should be dismissed. This finding, as we have indicated above, is based upon an entire misconception of the rule applicable to a case like this, which places the burden of proof upon the husband, or those who represent his estate, to show the utmost good faith (*uberrima fides*) in the transaction which this Court has been called upon to review —a transaction by which the husband acquired for his estate all the advantage, and his wife suffered all the disadvantage; in which case, as we have seen, the presumption is that there was fraud, undue influence and concealment; and it is incumbent upon those who seek to avail themselves of such advantage to show to the satisfaction of the Court that such presumption is not well founded. This the defendants have not only failed to do, but have failed to make any attempt to do, as they offered no testimony whatever as to that matter, although they had the means of explaining fully the whole transaction (of which they have not availed themselves) by examining as witnesses the two brothers of the testator, who were present at, and, to some extent at least, participated in the transaction which is here assailed."

In this case, there was a sufficient consideration for the execution of the deed and bill of sale. The defendants have actually paid off the mortgage on the personal property, and the plaintiff has had and will have the use of it during her life. They undertook the management of her business. Mr.

and Mrs. Hogg broke up their home and went to live with plaintiff and take care of her. Defendants have undertaken to settle the estate of her son and pay his debts, and they have also agreed to take care of her during her life. Under the circumstances, the transaction was a natural one, and, if the agreement of defendants is carried out in good faith, it will probably prove to be the best for the plaintiff.

In *Way's* case, there was nothing to repeal the presumption of fraud, arising from the fiduciary relation existing between the husband and wife. In this case, it has been met and overcome, and the preponderance of the evidence shows that there was no fraud or misrepresentation.

The judgment below is reversed and the complaint dismissed.