## 9720

### HUGGINS v. HUGGINS *ET AL.*

(93 S. E. 129.)

1. Deeds—Incapacity of Grantor—Proof.—That plaintiff's grantor, his mother, was 70 years old when she executed deed to plaintiff, that she habitually used morphine, and that her sisters were insane did not prove her incapacity, in the absence of other evidence tending to prove it.

2. Deeds—"Undue Influence"—Proof.—Where a mother and her son are deeply concerned in each other's welfare, the fact that one usually conforms to the other's will is not conclusive proof that it is the result of "undue influence," which is an influence which destroys free agency and substitutes the will of the stronger for that of the weaker mind.

3. Deeds — Consideration — Love and Affection. — Love and affection were sufficient consideration for a mother's deed of her interest in a farm to her son with whom she lived.

4. Deeds—Independent Advice for Grantor.—When a parent has sufficient capacity to understand the nature of a transaction, though she may not fully comprehend its legal effect, her conveyance to her son without the advice or sanction of others is valid.

Before Shipp, J., Bishopville, August, 1915. Reversed.

Action for partition by R. K. Huggins against F. V. Huggins and others. From a judgment for defendants, plaintiff appeals.

*Mr. Thos. H. Tatum,* for appellant, cites: *As to presumption:* 89 S. C. 268, 272; 20 S. C. 52; 57 S. C. 413; 85 S. C. 329; 93 S. C. 268; 87 S. C. 1; 30 S. C. 467; 24 S. C. 1; 86 S. C. 389.

*Messrs. Miller & Lawson, Hugh C. Haynsworth* and *Andrew B. Estes,* for respondents.

July 3, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This controversy arose out of the partition of the estate of A. G. Huggins, who died, intestate, in 1900, leaving his widow, Elinzy, and a number of sons and daughters, all of whom had grown up and left the parental roof. Soon after his death, his children met to devise a plan for the care of their mother, who had been left alone, and was then about 65 years old. After various suggestions, it was agreed that plaintiff should give up the farm upon which he was then living as a tenant, and move back to the old home and take care of the mother, and, in consideration of his doing so, the other children agreed that he should not be required to account to them for the personal property, which was of small value, or to pay them rent for the farm, which contained 80-odd acres. Accordingly, plaintiff lived with his mother at the home place, until 1912, when he rented it out and moved to the near-by town of Lamar. His mother lived with him until she died, in December, 1912. In the meantime, on November 10, 1906, plaintiff's mother executed a deed, whereby she conveyed to him all her interest in the farm. The deed was recorded the same day, but no

other notice of it was given to the other children. The consideration expressed was love and affection, and the nominal sum of $5. The deed also contains the following:

"This deed being executed by me for the consideration herein mentioned, and in view of the fact that, since the death of my husband, I have made my home with my son, the said R. K. Huggins."

Plaintiff brought this action for partition, claiming one-third of the land under the deed, in addition to his share by inheritance from his father. Some of the defendants acquiesced in his claims, and joined in the prayer of his complaint. Others attacked the deed, alleging that it was without sufficient consideration, and that it was obtained by undue influence. The Circuit Court sustained these contentions, and set the deed aside, holding that the evidence established five badges of fraud, which plaintiff had failed to remove: (1) Grossly inadequate consideration; (2) feeble mental condition of the grantor, due to old age or other causes; (3) absence of independent advice; (4) fiduciary relationship; (5) unfair conduct.

It appears from the opinion of the Circuit Court that its conclusion was influenced by at least two errors of law: First, in giving undue weight to the presumption which arose from the relationship and situation of the parties to the deed; and, second, in misapplying the law relative to the sufficiency of consideration to the transaction in question.

The weight which should be given to the presumption of fraud or undue influence which may arise from the relationship of the parties to a transaction varies with the facts and circumstances. *Devlin* v. *Devlin,* 89 S. C. 268, 272, 71 S. E. 966. In some circumstances no such presumption would arise at all, notwithstanding the existence of the relationship; or, if so, it would be so weak that slight evidence, or even a countervailing presumption, would overcome it. On the other hand, it may be so strong as to

require clear and satisfactory proof of good faith and fair dealing.

Plaintiff's mother was about 70 years old when she executed the deed. She was addicted to the use of morphine. She had two sisters. One died in the State Hospital for the Insane. The other is there now. But she was in good health for a person of her age, and there is no competent evidence of her mental incapacity. The mere fact that she was 70 years old warrants no such inference, nor does the fact that she habitually used morphine, in the absence of testimony that it was used to such excess as to impair her mind, nor does the fact that her sisters were insane prove her incapacity. All these facts together are not sufficient, in the absence of any other evidence tending to prove incapacity.

The only evidence tending to show any mental aberration on her part comes from a nephew and a grandson, who testified that her mind seemed to be all right sometimes, and at others a little off. But neither stated the facts upon which his opinion was based. If these had been stated, it might have appeared that their conclusions were unwarranted, and based entirely upon the suspicion with which they not unnaturally viewed her conduct in the light of the circumstances, which, no doubt, caused them to notice in her what would have made no impression upon them in any one else.

On the other hand, though she frequently visited among her children, staying with them sometimes for weeks together at a time, and they visited her frequently, and therefore had the best opportunities of observing her condition, not one of them testified to any mental deficiency whatever. Her physician, who treated her off and on for years, until she died, never observed any mental weakness, and said that he would regard her business transactions as good. Mr. Thos. G. McLeod and Mr. B. Frank Kelley, members of the bar of long experience and unquestioned

ability and integrity, witnessed the deed, and both testified
that she appeared to be all right at the time. Neither of
them saw anything in the transaction out of the ordinary,
or to excite suspicion of incapacity or undue influence. Mr.
McLeod talked with her about the business in hand, and
prepared the deed according to her directions, and both of
these witnesses give positive testimony that she understood
what she was doing, and did it of her own free will.

Plaintiff testified that his mother was strong and active
for one of her age, and in normal condition when she exe-
cuted the deed; that she frequently said she wanted to give
him her interest in the land; that he did not, at any time,
exercise any influence upon her to get her to do it; that,
when his father died, he was living on another place, where
the land was better than his father's, and he was doing well,
but gave up that place, at the urgent request of his mother,
who said she preferred him to live with her to any of the
others. When asked why he did not rent out the home
place, and take his mother to live with him, he said that
she would not consent to leave the old home. He was
then asked why she consented to leave it, in 1912, when she
had before refused, and replied:

"I don't know, but she did. Q. You know she did what
you told her to do? A. Yes, principally."

He said further, that she did not consent for him to move
until he explained to her that he would thereby improve
his condition financially, and have access to a better school
for his children.

Plaintiff's testimony on this point is set out in detail,
because the answer to the question above quoted was con-
sidered by the Circuit Judge as "a very significant state-
ment," from which the inference was drawn that plaintiff
had and exercised undue influence over his mother. But,
when considered in the light of all the circumstances, the
reverse appears to be the more logical conclusion. From
these it appears that the mother's will was dominant. It

carried the son back to the old home and kept him there for 12 years, 6 of these after she had made him the deed. She did not give her consent for him to move until he satisfied her reason that the move would be best for him and his children; and he did not move until she consented. They show, too, that she was capable of, and was controlled by, reason in the matter, for if she had persisted in making him stay on the farm, under the circumstances stated, it would have been indicative of mental weakness or capricious obstinacy.

Where two persons are closely associated in the affairs of life and deeply concerned in the welfare of each other, the mere fact that one usually conforms to the will of the other is by no means conclusive proof that it is the result of undue influence. Happily for society, it is most often the result of commendable motives on the part of both, the desire of the one to co-operate in the efforts of the other in the most helpful way, and the thoughtful consideration of the other, which makes no request that in reason cannot be cheerfully complied with. Harmony of thought and action so induced is not to be attributed to undue influence, which, in its legal sense, is an influence which destroys free agency and substitutes the will of the stronger for that of the weaker mind. There is no direct evidence that plaintiff had or exercised any such influence over his mother. If it had been so, surely some of the other children would have observed and testified to it. The conclusion that he had and exerted such influence rests solely upon the presumption which arose from the relationship between them, which, under the circumstances, was not very strong to begin with, and it was completely overcome by the facts and circumstances of the case and the testimony of the witnesses to the deed.

It is significant that the old lady never expressed to any of her children any dissatisfaction about the deed, though she lived for 6 years after its execution. If she had been

cajoled or coerced into signing it, she would have complained to some of the others about it. Visiting among them frequently, she had ample opportunity to make her feelings known to them.

The Court allowed the inadequacy of consideration to have undue weight in its decision. There was really no consideration for the deed, except love and affection. But that was enough. The property was hers. She had the right to dispose of it as she pleased, and she gave it to plaintiff. The other matter stated in the deed, which has been quoted, does not purport to have been the consideration, or even a part of it, but merely states the reason for the execution of the deed. Indeed it refers to the consideration as having already been mentioned. A parent has the right to make a voluntary gift to one of his children, and there is no pretense that the deed in question was anything else. The *jus disponendi* is a highly cherished and favored right, and it must not be interfered with upon slight or unconclusive grounds.

We consider next the alleged want of independent advice. If a person has sufficient capacity to understand the nature of a transaction, even though he may not fully comprehend the legal effect of it in all of its possible phases and consequences, the law permits him to do what he wishes with his own without the advice or sanction of others. But Mrs. Huggins did have the benefit of an entirely disinterested and competent adviser. Plaintiff did not carry her to his own attorney, but to one who did not even know him, one who was selected because of his known ability and probity of character. Plaintiff evidently knew that Mr. McLeod would see that no wrong was done, for he said that, if he had thought that he was doing wrong, he certainly would not have gone to Mr. McLeod. And yet it is suggested that he availed himself of the high character of Mr. McLeod to cloak his wrongful purpose.

It is said, too, that he acted unfairly toward his brothers and sisters, in that he got more by the deed for the care of his mother than they had agreed to give him, without telling them about it. That misconception is based upon the erroneous assumption, already considered, that the care of his mother was the consideration of the deed. His brothers and sisters had no legal interest in his mother's share of the land or rents. In bargaining with him they dealt only with their own shares of the personal property and rents.

But why did she give him all her share in the estate to the exclusion of her other children? She answers that question in part in her deed: Because she made her home with him. He answers it in part in his testimony, which is not denied by any of the others. He says he was her favorite child, and that was why she preferred him to all the others to live with her, and why she wanted him to have her interest in the land. His love was faithful to the point of making sacrifices for his mother in which the others were willing for him to have the preference. His mother rewarded it by giving him a more substantial preference, as she had the right to do; and they have no just ground to complain of it.

The judgment of the Circuit Court is reversed, and the case is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed.