Dorothy Delores PASTERNAK, Plaintiff-Respondent,

v.

Frank MASHAK and Frank Mashak, Executor of the Last Will and Testament of Elizabeth Milanko, Deceased, Defendants-Appellants.

No. 32125.

St. Louis Court of Appeals.

Missouri.

June 15, 1965.

Rehearing Denied July 13, 1965.

Frank Mashak, St. Louis, for defendants-appellants.

Dubinsky & Duggan, Sidney W. Horwitz, St. Louis, Ralph E. Suddes, Mattoon, Ill., for plaintiff-respondent.

DOERNER, Commissioner.

This is an action to contest the will of Elizabeth Milanko, who died on December 22, 1959, at the approximate age of 70. Upon a trial to a jury a verdict was returned finding that the paper writing produced and read in evidence was not the will of the deceased. Judgment was entered in accordance with the verdict, and after post-trial motions proved unavailing, proponent, individually and as executor, appealed to the Supreme Court. Ruling that it lacked appellate jurisdiction, that court transferred the cause to this court. Pasternak v. Mashak, Mo., 383 S.W.2d 760.

Dorothy Delores Pasternak, the contestant, challenged the purported will on the pleaded grounds of lack of testamentary capacity, improper execution, and undue influence on the part of proponent, Frank Mashak. However, contestant submitted her case to the jury only on the issues of testamentary incapacity and undue influence. Proponent questions the submissibility of contestant's case and the giving of certain instructions on her behalf, and also complains that certain comments made during the contestant's argument were prejudicial. The motion for a directed

verdict filed by proponent at the close of all the evidence was general in nature and therefore directed to both submissions. It follows that if the contestant's evidence supported either issue the court did not err in overruling proponent's motion. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Nelson v. Wabash R. R. Co., Mo., 300 S.W.2d 407. For a reason which will presently appear we consider first whether there was sufficient evidence adduced to make a submissible case on the charge of undue influence. In so doing we bear in mind the rule that we must disregard the evidence offered by the proponent unless it aids contestant's case, accept the contestant's evidence as true, and give her the benefit of every inference which may legitimately be drawn from it. Sturm v. Routh, Mo., 373 S.W.2d 922; McGrail v. Schmitt, Mo., 357 S.W.2d 111.

Elizabeth Milanko, the testatrix, was first married to Dr. Horace Reddish. One child was born of their union, a son, Hubert. In 1933 Hubert married Dorothy Eckert, and during the time their marriage lasted only one child was born, the contestant, on November 22, 1936. Dorothy Eckert Reddish was granted a divorce from Hubert, as well as the custody of the contestant, by the Circuit Court of the City of St. Louis on April 28, 1938. In that connection and in consideration of $50 paid to her by Hubert, Dorothy released all rights and interests, including dower, which she had in Hubert's real and personal property. Shortly thereafter mother and daughter removed from St. Louis to California, where the contestant has resided since she was 3 years of age.

The marriage of the testatrix with Dr. Reddish ended with the latter's death on February 5, 1938. At some time thereafter, not disclosed by the record, the testatrix married Savo Milanko and they resided for most, if not all, of their married life at 1902a Franklin Avenue in the City of St. Louis.

On the 16th day of February, 1938, prior to being divorced by Dorothy, Hubert Reddish executed his last will by which he left $1.00 to his wife and a similar amount to contestant, his daughter, and the remainder of his estate to his mother, the testatrix. Hubert died on July 14, 1944. Savo Milanko, the second husband of the testatrix, died on February 21, 1959. And as previously stated, the testatrix died on December 22, 1959. Thus the contestant is the granddaughter of the testatrix and her only heir at law.

The proponent of the will, Frank Mashak, is a practicing St. Louis attorney who first became acquainted with the testatrix in 1944, shortly after the death of Hubert. It appears that Steven M. Reddish, the father of Dr. Horace Reddish, owned a substantial amount of real estate in Jersey County, Illinois. Steven died in 1919, survived by his widow, Sarah, and two sons, Clarence and Horace. Sarah died on May 4, 1920, during the administration of Steven's estate. In general, by his will Steven left the residue of his estate in trust for the benefit of his wife and two sons. At some undisclosed time, whether before or after the death of Horace does not appear, lengthy and involved litigation began in the State and Federal courts in Illinois concerning the construction of Steven's will, the real estate held in trust, and the extent of the interests of the respective beneficiaries in the corpus and income thereof. It is apparent from the record that a part of the litigation was being prosecuted during the life of Hubert Reddish, the son of Horace and the testatrix, for a concurrent controversy developed between Hubert and two St. Louis lawyers he had employed to represent him therein, Richard A. Austin and Taylor R. Young.

The proponent testified that in the latter part of July or August, 1944, after Hubert's death, the testatrix consulted him regarding the nature and extent of her interest in the Reddish property. After some investigation on his part, a contract

was executed by the testatrix on August 29, 1944, and accepted by the proponent, whereby testatrix employed the proponent as her attorney and in consideration of the services rendered and to be rendered by him agreed to give the proponent fifty per cent of whatever was recovered, whether by suit or compromise. It is unnecessary for the purposes of this appeal to recite the details of the extensive and complicated legal proceedings in the State and Federal courts of Illinois in which the proponent participated on behalf of the testatrix, or to dwell at length upon the litigation in Missouri and Illinois concerning the claims of Austin and Young for payment for services rendered by them to Hubert. Suffice it to say that all such matters were ultimately resolved by two decrees of the Circuit Court of Jersey County, Illinois, the first dated April 4, 1952 and the second July 6, 1953. The final result was that the testatrix received a one-sixth interest in fee to what was called the North Farms; the proponent received one-sixth; the contestant received a one-half interest; and her attorneys Gibbons and Hacker, were given the remaining one-sixth interests. However, such interests were subject to the provision that the testatrix and the proponent were to receive three-fourths of the income for the life of the testatrix, and the contestant and Gibbons and Hacker one-fourth.

According to the proponent, the North Farm was at first operated by Gibbons and Hacker taking the laboring oar on behalf of all the interests. A checking account was established in the name of "Milanko-Reddish Farm" in a bank in Jerseyville. Most of the checks were signed by Gibbons, but one or two were signed by proponent. After about a year difficulties developed between testatrix and proponent on the one hand and the other owners on the other and new arrangements were made. In that connection proponent and testatrix opened a joint checking account, with right of survivorship, at the First National Bank in St. Louis. Checks for their share of the

income from the farm were made payable to them, both would endorse them, and the checks were then deposited in the joint account. Out of this account proponent and testatrix paid their share of the expenses of operating the farm, such as seed corn, fertilizer, and taxes. Proponent stated that Mrs. Milanko wrote a few checks in payment of bills, but that he wrote all the rest. In the words of the proponent, so far as their interests in the farms were concerned he and the testatrix operated as "a partnership." From the evidence it is apparent that proponent was the dominant or managing partner.

Proponent testified that after the conclusion in 1953 of the litigation over the Reddish property he did not perform any more legal work for the testatrix. However, he stated that in 1954 he prepared a quitclaim deed whereby the testatrix conveyed all of her interest in the Jersey County property to proponent and Savo Milanko, her husband, as joint tenants and not as tenants in common, reserving to herself her right to her share of the income during her lifetime. Proponent testified that he and Savo paid testatrix $1.00 in consideration, each paying one-half. The quitclaim deed, introduced in evidence, is dated October 20, 1954, and was acknowledged before Edward Krech, a notary and lawyer. According to proponent it was executed in the home of testatrix, in the presence of the notary and proponent.

There was also testimony by the proponent that when Savo died in 1959 he had $1600 in post office savings certificates and $120 in cash in his safe deposit box. Proponent witnessed the signature of testatrix at her request when a postal employee made payment of the certificates at her home, and was told by the testatrix to deposit the proceeds in the Roosevelt Federal Savings and Loan Association. He took it there and opened an account in his name. He stated he wanted to put it in his name as trustee for the testatrix but that, " * * * they wouldn't allow me to add her name. * * * " The proponent offered no ex-

planation of why he did not open the account in the name of the testatrix. It was inventoried among the assets of her estate. There was also evidence by the proponent that during the last time the testatrix was in the hospital, shortly before her death, the sum of $1,000 was withdrawn from her share of the farm joint checking account and placed by the proponent in what he termed a special account. From it he paid the hospital and medical expenses of the testatrix.

Proponent identified and introduced in evidence two prior wills which he had prepared for the testatrix. By the first, dated April 28, 1945, she directed that her just debts be paid and that the residue of her estate go to Savo, her husband. By the second, dated April 23, 1948, after the provision for debts, she gave the remainder to her husband and the proponent. As to the last instrument, Mashak testified that in the latter part of June or the first part of July, 1957, the testatrix and her husband appeared at his office and testatrix stated that she wanted to change her will. According to proponent, she gave him directions and in a day or so he prepared and typed the will according to the directions she had given him. Mrs. Dorothy Stallings, one of the witnesses, who had long been a client of proponent, testified that she had gone to proponent's office and was in his waiting room at the time that Mr. and Mrs. Milanko called to see him. She said that they talked for at least 45 minutes, during which time Mrs. Milanko said they wanted to have their wills made and asked her whether she would be a witness. Mrs. Stallings stated that she would be glad to do so. Irwin Walker, a lawyer, the other witness, testified that he had met Mr. and Mrs. Milanko on three or four occasions in the court house; and that the day before the will was executed Mrs. Milanko called him up and asked him to serve as a witness and he agreed to do so. Walker was asked on cross-examination whether he had ever witnessed any other wills for the proponent and at first said he had not, but then recalled that he had witnessed the wills of proponent and proponent's wife. Proponent related that he asked Mrs. Stallings and Walker to meet him at his office on July 3, 1957, and they all went together to the Milanko home. There was testimony that the testatrix read the document, that proponent explained it to her, that she was asked if it was what she wanted, and that she replied that it was. Testatrix then signed, as did the witnesses. The writing in question is as follows:

"LAST WILL AND TESTAMENT

"KNOW ALL MEN BY THESE PRESENTS, that I, Elizabeth (nee Reddish) MILANKO, residing at 1902-a Franklin Avenue, in the City of St. Louis, State of Missouri, being of sound mind and disposing memory, hereby make, publish and declare this as and to be my Last Will and Testament, hereby revoking all of my prior wills and codicils.

"FIRST: I direct that all my just debts, the expenses of my last illness and funeral be paid as soon after my demise as is reasonable.

"SECOND: All the rest, residue or remainder of my estate, be it real, personal or mixed, I place in trust for my beloved husband Savo Milanko, naming and appointing Frank Mashak, Esq., as trustee to act without bond, during the natural life of my husband, and the said trustee is authorized and empowered to use his own discretion in providing for my husband during his life time, said trustee's judgment and discretion being absolute and irrevocable.

"THIRD: Upon the death of my husband Savo Milanko, I give, devise and bequeath the entire remainder of my estate, be it real, personal or mixed to our mutual friend Frank Mashak, absolutely and in fee simple and to his heirs if he should predecease my husband.

"FOURTH: I nominate and appoint Frank Mashak, Esq., 4114 Olive Street, the executor of this my Last Will and Testament and as trustee to be permitted to serve without bond.

"IN TESTIMONY WHEREOF, I have hereunto set my hand to this my Last Will and Testament in the City of St. Louis, Missouri, on this 3rd day of July, 1957.

/s/  Elizabeth Milanko

Testatrix."

Proponent testified that the testatrix was a strong-willed person, that Savo had told him on other occasions that he gambled, and that testatrix "* * * wanted the matter placed so that I could control the amount that he (Savo) would receive in case of her death." It was related by proponent that Savo's will was also executed on the same occasion, in which he left everything to the testatrix, but if she should predecease Savo, then the residue was to go to proponent.

Proponent testified that he prepared the income tax returns for the income from the farm property but that testatrix filed her own return. He stated that during the time he knew her she was ill at times from a gall bladder operation performed prior to meeting her, and that she couldn't keep anything on her stomach. She also developed cirrhosis of the liver, and a cardiac condition. There was testimony that testatrix was in and out of hospitals at least twice, that her health was poor, and that she was constantly taking medicine. Mashak testified that he had taken Mrs. Milanko to the hospital two or three times and that several times when she went to her doctors she telephoned him and he picked her up at a pharmacy and took her home. He stated that during the time he knew testatrix he had eaten a dozen or so meals in the Milanko home, and that testatrix had been in his home only once, when on returning from Jerseyville they stopped by to drop off a crate of eggs.

■ Since Loehr v. Starke, 332 Mo. 131, 56 S.W.2d 772, it has been the rule in this state that a presumption arises that the testator has been unduly influenced by the beneficiary charged therewith when the evidence shows: (1) that a confidential or fiduciary relationship existed between the testator and the beneficiary; (2), that by the terms of the will the fiduciary has been given a substantial bequest; and (3), that the fiduciary was active in procuring the execution of the will. Switzer v. Switzer, Mo., 373 S.W.2d 930; Wilhoit v. Fite, Mo., 341 S.W.2d 806; Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842. When supported by probative evidence the presumption makes a prima facie case which does not disappear upon the introduction of rebutting testimony and raises an issue for the jury. Loehr v. Starke, supra; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400; Cuthbert v. Heidsieck, Mo., 364 S.W.2d 583.

■ In his brief proponent freely admits that a confidential relationship existed between the testatrix and proponent. As to the second element required to raise the presumption, the will itself is sufficient proof. Subject to the trust created for the benefit of her husband during his lifetime, it provides that the proponent or his heirs are to receive the entire remainder of the testatrix's estate. But proponent argues that mere proof of a confidential relationship and an opportunity to exert undue influence, without more, is insufficient to take the case to the jury, citing Loehr v. Starke, supra; Aaron v. Degnan, Mo., 272 S.W.2d 216; Powell v. Raleigh, Mo.App., 244 S.W.2d 387, and that the record is devoid of any credible evidence that he unduly influenced the testatrix in any manner. The rule is as contended for by proponent but an examination of those decisions will reveal that in both the Loehr case and the Aaron case there was no evidence that the fiduciary charged with having exerted undue influence had engaged in any activity connected with the conception of the will; and in the Powell case the judgment revoking the will was reversed only because of erroneous instructions.

What the proponent really means is that there is no direct evidence of undue influence. It has been recognized, however, that undue influence "is not proclaimed from the housetop, * * *" Wilhoit v. Fite, Mo., 341 S.W.2d 806, 813, and that direct proof is difficult, if not impossible, to obtain. Hence the rule is that the fact may be proven by circumstantial evidence. Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842; Larkin v. Larkin, Mo., 119 S.W.2d 351; Webster v. Leiman, 328 Mo. 1232, 44 S.W.2d 40.

An exhaustive review of the Missouri cases discloses that when the existence of a confidential relationship and a benefaction to the fiduciary is shown, our appellate courts have adopted a very liberal attitude regarding the quantum of evidence necessary to establish that the fiduciary was actively concerned in some way which caused or contributed to cause the execution of the will. Thus proof that the beneficiary who benefited procured and paid the lawyer who drew the will, or that he arranged for and attended conferences at which the will in prospect was discussed, has been held sufficient evidence of activity in the procurement of the will. Machens v. Machens, Mo., 263 S.W.2d 724; McCormack v. Berking, 365 Mo. 913, 290 S.W.2d 145; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400. And where activity in the preparation and execution of the will is reasonably proven, such evidence, together with that of the confidential relationship and the benefaction, is sufficient to raise the presumption of undue influence and to make a submissible case for the jury on that issue. Pulitzer v. Chapman, supra; Odom v. Langston, 347 Mo. 1201, 152 S.W.2d 124; Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842; Norris v. Bristow, 358 Mo. 1177, 219 S.W.2d 367; Machens v. Machens, supra; McCormack v. Berking, supra; Wilhoit v. Fite, supra. In the light of those cases it logically follows that the evidence is sufficient to create the presumption when a will leaving a substantial bequest to an attorney is shown to have been drafted and its execution supervised by him. This would seem to accord with the rule that "* * * public policy dictates the necessity to protect the confidential and fiduciary attorney client relationship, * * *" Laspy v. Anderson, Mo., 361 S.W.2d 680, 682. And see Moll v. Pollack, 319 Mo. 744, 8 S.W.2d 38; Cuthbert v. Heidsieck, Mo., 364 S.W.2d 583; 7 C.J.S. Attorney and Client § 127; 7 Amer.Jur.2d, Attorneys at Law, Sec. 96. Such a presumption (or inference) is, of course, rebuttable, and in fairness to proponent it should be said that there was countervailing testimony on his part and that of the attesting witnesses. But the contestant was not bound by that testimony and the jury had the right to disbelieve it. Wilhoit v. Fite, Mo., 341 S.W.2d 806. Taking into account all of the facts and circumstances shown by the evidence we think the evidence in this case was as strong or stronger than that which was held sufficient to make a submissible case on the issue of undue influence in Pulitzer v. Chapman, supra; Clark v. Powell, supra; McCormack v. Berking, supra; and Machens v. Machens, supra. Hence the court did not err in overruling proponent's motion for a directed verdict at the close of all the evidence.

Proponent next contends that the court erred in submitting to the jury the issue of the testatrix's lack of testamentary capacity. That issue was submitted on the part of contestant by an instruction numbered by the court as Instruction No. 1. Proponent offered and the court gave an instruction on the same subject which was designated by the court as Instruction No. 8. Proponent now maintains that there was no substantial evidence introduced to support the submission to the jury of the issue of testamentary incapacity, and that the court, therefore, erred in giving the contestant's instruction. Contestant seems to tacitly concede the lack of probative evidence, for neither in her brief nor in oral argument did she dispute proponent's assertion of insufficiency, or point to any evidence claimed to be sufficient to support the submission. Instead, she invokes what has been referred to as the rule of "invited error," and cites

in support thereof Mowry v. Norman, 223 Mo. 463, 122 S.W. 724. There the will was challenged on the grounds of undue influence and testamentary incapacity. The proponent filed a general peremptory instruction, which was refused, and the court's action sustained because the Supreme Court had held in a prior appeal that the evidence was sufficient to make a jury question as to undue influence. The proponent also asked and was given a separate peremptory instruction on the due execution of the will, but he did not request a separate peremptory instruction on the issue of lack of testamentary capacity. Instead, as the report points out, the proponent asked and was given an instruction submitting to the jury the question of mental incapacity. Contestant offered and the court gave a converse instruction on the same issue. On appeal from an adverse decision proponent contended that the evidence was not sufficient to show lack of testamentary capacity and that the court erred in giving contestant's instruction. Proponent's claim of error was overruled on the grounds, first, that the proponent (defendant) had not asked for a separate peremptory instruction: (loc. cit. 472, 122 S.W. loc. cit. 726)

"As to the second question, i. e., that of mental incapacity, the defendant instead of asking for a peremptory instruction and thereby forcing the court to declare whether or not there was any evidence upon which to submit said question, said defendant assumed a different course; that is to say, he asked and was given instructions fully covering and submitting to the jury the question of mental incapacity."

As the second grounds for its ruling the court pointed out that proponent had invited the error by being the first to offer an instruction on the issue, and was, therefore, in no position to complain: (loc. cit. 473, 122 S.W. loc. cit. 727)

" * * * When such defendant by instructions submitted by him and ap-

proved by the court presents that question to a jury, it cannot be said that the opposite party has committed error when he submits and has approved an instruction upon the same question, unless the instructions so given are absolutely at variance, so that a jury might be misled by either or all of the instructions.

"It has been continuously held that, where one side presents instructions upon certain points, the other side cannot be held as committing error in presenting similar instructions upon the same question. See Gordon v. Park, 219 Mo. [600] l. c. 611 [117 S.W. 1163 l. c. 1166] and cases cited.

"In this case the instructions asked and received by defendant were as broad as the law will permit, and he, having invoked the judgment of the jury upon the question of mental incapacity, is in no position to complain of a proper instruction upon the same question by the plaintiffs. * * * "

▪ It should be noted, in passing, that that part of the opinion in Mowry v. Norman, supra, regarding the necessity of demurring separately to each issue is no longer the law. At the time that case was decided, and for a period thereafter, the rule was that if a defendant wanted to save his point as to the insufficiency of the evidence on each of the plaintiff's pleaded assignments he was required to demur to the evidence on each issue separately; and that he waived any error in the overruling of his general demurrer to the evidence by offering instructions on the issues submitted. Torrance v. Pryor, Mo., 210 S.W. 430. But the Torrance case was expressly overruled by Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600. The rule announced by Elkin and the later decisions is that a general demurrer challenges the sufficiency of the evidence on every pleaded assignment, and that the defendant does not waive the error in the submission of an issue unsupported by the evidence by offer-

ing a converse instruction. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589; Myers v. Buchanan, Mo., 333 S.W.2d 18. The reason for the rule, as pointed out in Elkin v. St. Louis Public Service Co., is " * * * because such a submission on the part of defendant is not voluntary but is forced by the adverse ruling on the demurrer to the evidence. * * * " (74 S.W.2d 601)

The view of the rule of invited error expressed in Mowry v. Norman, supra, accords with the present concept of that rule. As is pointed out in an exhaustive discussion of the rule in Myers v. Buchanan, Mo., 333 S.W.2d 18, the doctrine is predicated on the assumption that the party complaining of his opponent's error invited or induced his opponent to commit the error. But as is there made clear, the rule has no application when the party complaining did not invite the error and was forced to his position by the rulings of the court. Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 227 S.W. 67, 76, distinguishes between the party who invites the error and the party who yields to it on demand of the court: " * * * It did not voluntarily choose that position; it was driven to it after it had chosen other ground. Consideration of the cases cited above will show that emphasis is placed upon the voluntary choice of ground by a party who is held to waive his right to complain * * *." Thus, where an erroneous instruction offered by one party is given over the objection of the other, who then requests a countervailing instruction, it is held that the second party did not waive his right to complain since he did not invite the error nor voluntarily acquiesce therein. Griffith v. Continental Casualty Co., 290 Mo. 455, 235 S.W. 83; Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852; Berry v. Harmon, Mo., 329 S.W.2d 784.

We concur in the rule of invited error announced in Mowry v. Norman, supra, and with the manner in which it was applied in that case. But there is an important and controlling factual difference which distinguishes that case from the case at bar. The result reached in Mowry was based on the fact that it was the proponent who first offered the erroneous instruction on testamentary incapacity. Whatever may have been the procedure followed in Mowry, the record in the instant case does not show that this proponent was the first to offer an instruction on that issue. Indeed, where, as here, the will is challenged on more than one ground it is difficult to see how the proponent would be in the position of initiating an error of this character. For example, the contestant in this case alleged three grounds of attack upon the will, improper execution, undue influence, and lack of testamentary capacity. Upon the overruling of his motion for a directed verdict at the close of all the evidence the proponent obviously did not know whether contestant would endeavor to submit her case to the jury on one or more of such questions until the contestant offered her instructions and the court decided which would be given. The fact that the court designated contestant's instruction as Instruction No. 1 and proponent's as Instruction No. 8 indicates that it was the contestant who first offered an instruction on mental incapacity. Hence if any error was invited in the instant case it would appear that the invitation was extended by the contestant, not the proponent.

The record shows that the proponent filed a motion for a directed verdict at the close of contestant's evidence, and again at the close of all the evidence. He duly objected to the giving of Instruction No. 1, and has preserved the point in his after-trial motions. When the court overruled his objection to the instruction proponent was faced with the dilemma of allowing the issue of testamentary incapacity to be submitted to the jury without a counteracting instruction, or of offering a con-

verse instruction to minimize so far as possible the effect of contestant's instruction. Certainly under these circumstances proponent did not "invite, adopt, acquiesce in, ratify or in any other manner appearing of record 'waive' the errors * * *" in the giving of Instruction No. 1 by offering his Instruction No. 8. Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 489; and he "* * * could make the best of the situation into which he was forced by the court's ruling and yet have a right to complain, * * *" Berry v. Harmon, Mo., 329 S.W.2d 784, 792.

There is no substantial evidence in this record that the testatrix lacked testamentary capacity at the time the will was executed, and that issue should not have been submitted to the jury. The jury may well have been misled by the submission, for "* * * Submitting factual issues to a jury implies there is substantial evidence warranting the submitted finding, * * *" Switzer v. Switzer, Mo., 373 S.W.2d 930, 940. Hence it is held that "* * * The giving of an instruction where there is no evidence upon which to base it constitutes reversible error. * *" Adams v. Kendrick, 321 Mo. 310, 11 S.W. 2d 16, 25; Hart v. Midkiff, Mo., 321 S.W.2d 500; Switzer v. Switzer, supra. Under these authorities we must and do hold that the giving of Instruction No. 1 constituted reversible error.

Other matters complained of by proponent can be considered and remedied by the contestant where necessary on a retrial of the case.

For the error noted the judgment should be reversed and the cause remanded for a new trial. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is reversed and the cause remanded for a new trial.

ANDERSON, Acting P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.