**Kathryne CARROLL and Barbara Grannemann, Appellants,**

v.

**Clara KNOTT, Joseph Knott, Glenn Miller, Bernice Miller, and Jeff W. Schaeperkoetter as the Executor of the Estate of Walter Borlisch, Respondents.**

**No. 43852.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 20, 1982.

John B. Berkemeyer, Hermann, for appellants.

Walter D. McQuie, Jr., Montgomery City, for respondents.

REINHARD, Presiding Judge.

On July 1, 1978, testator, Walter Borlisch, executed a will bequeathing $500 to each of his two daughters with the residue of his estate to his sister, Clara. He died on September 8, 1978. His two daughters filed this action contesting his will against the testator's two sisters and their husbands. Contestants alleged testamentary incapacity and the undue influence of defendant Clara Knott. At the close of all the evidence, the trial court sustained defendants' motion for a directed verdict and declared the contested instrument to be testator's last will and testament. Plaintiffs appeal. We reverse and remand.

Testator and his wife had one natural child, Kathryne, and an adopted child, Barbara. Until his wife died when Kathryne was 10 and Barbara 2½, they lived on testator's farm near Owensville, Missouri. At her death, the children moved in with their maternal grandparents. Except for a short time, the grandparents raised the children, relying principally on their mother's Social Security benefits. Testator visited the children on occasion and attended their graduations and weddings.

After Kathryne married, she and her husband lived for a year on testator's farm. In early 1970, testator lived part-time with his sister, Clara and her husband. In 1974, he contracted cancer and entered the hospital for a period of time. After 1974, he lived full-time with Clara except for several stays in the hospital.

Testator could neither read nor write, but could sign his name and add and subtract. Clara and the testator had a joint bank account and she wrote his checks. Kathryne testified she did not visit testator while he lived with Clara because he told her Clara did not like her. Kathryne stated she was unable to talk to her father alone, although she did see him a few times alone on the streets of Owensville. She testified she loved her father. Her sister, Barbara, though testified she didn't know whether she loved her father because she didn't know him that well. Before his hospitalization in 1974, and while he was in the hospital, Kathryne asked him to sell the farm to her and her husband. She testified he told her on both occasions, "It would be given to you girls at the time of my death."

In the latter part of May, 1978, or the first part of June, testator and his sister went to the office of an attorney. Neither the attorney nor his partner had met the testator or his sister, Clara, before. Clara remained present in the room with testator and the attorney. The first question testa-

tor asked the attorney was, "what do I have to give my daughters?" From his discussion with the testator, the attorney determined that he had a farm of approximately 150 acres along with a pickup, some personal property of his own, and a sum of money held in joint names with Clara.

At the end of the conference, the attorney agreed to prepare a will leaving $500 a piece to each of his daughters with the residue going to Clara and if she predeceased him, the residue to go to her husband Joe, if he continued to care for him. If both Joe and Clara predeceased him, the residue was to go to his sister Bernice and her husband or the survivor. The attorney testified that all of the decisions as to disposition of his property were testator's, but that Clara had participated in the discussions.

Testator and Clara both returned on July 1. The attorney's partner was in the office at that time. In the presence of Clara and the testator, he read the will and in addition, summarized it paragraph by paragraph. It was witnessed by the partner and the office secretary. Decedent paid for the will, but asked for the money from Clara. Clara testified it was testator's money. When they left, testator gave her the will because he apparently was on the way to the hospital.

On appeal, contestants assert that they made a submissible case on the issue of undue influence. The burden of proving undue influence was upon contestants. A presumption of undue influence arises if: 1) a confidential or fiduciary relationship exists between the decedent and the beneficiary; 2) the beneficiary has been given a substantial benefit by the will; and 3) the beneficiary was active in procuring the execution of the will. *Simmons v. Inman*, 471 S.W.2d 203, 206 (Mo.1971); *Goodnight v. Curry*, 618 S.W.2d 278, 279 (Mo.App.1981). When supported by probative evidence, the presumption makes a prima facie case which does not disappear upon the introduction of rebutting evidence and raises an issue for the jury. *Simmons v. Inman*, 471 S.W.2d 203, 206 (Mo.1971).

Our review is limited to a determination of whether or not the evidence viewed favorably to the contestants established facts from which the jury could have reasonably inferred undue influence. *Matthews v. Turner*, 581 S.W.2d 466, 468 (Mo.App.1979). In this determination, we must disregard defendants' evidence unless it aids plaintiffs' case and give contestants the benefit of every favorable inference which may be drawn from the whole evidence. *Pasternak v. Mashak*, 392 S.W.2d 631, 633 (Mo.App. 1965). Defendants admit that there was sufficient evidence for the jury on the elements of a confidential relationship and benefits received, but contend there was insufficient evidence on the element of activity in procuring the execution of the will.

Defendants rely on the Supreme Court case of *Snell v. Seek*, 363 Mo. 225, 250 S.W.2d 336 (1952) to support their contention that plaintiffs did not make a submissible case. There, the proponent-husband took the testatrix's handwritten notes to a lawyer neither knew. He told the lawyer his wife wanted a will. The lawyer prepared the will from the notes. The next morning, husband called the lawyer and said witnesses were there and requested the lawyer bring the will to the house for signature. The testatrix, age 83, was propped up in bed. The lawyer asked others to leave and talked to her alone. He read the will to her and explained the provisions. The Supreme Court reversed a verdict for the contestants and found insufficient evidence of undue influence.

In *Snell*, the court held there was no confidential relationship and not sufficient evidence of activity by the husband in procuring the execution of the will. Here, defendants concede there was a confidential relationship, and more importantly, more recent cases evince a more liberal view towards the evidentiary requirements as to active participation.

In *Simmons v. Inman*, 471 S.W.2d 203 (Mo.1971), the court reviewed several factors that have been recognized in determining whether undue influence has been

exercised. These include evidence of the mental and physical condition of the decedent; evidence of power and opportunity to influence the decedent by the beneficiary; whether the will makes an unnatural disposition of property; and whether the bequest constitutes a change from a former will. It has also been recognized that hostile feelings of the beneficiary towards an expected recipient, remarks of the beneficiary to the testator derogatory of the contestant, and actions of the beneficiary in discouraging visits by others are also relevant. *Matthews v. Turner*, 581 S.W.2d 466, 472 (Mo. App.1979).

In *Switzer v. Switzer*, 373 S.W.2d 930 (Mo.1964), testator favored one child and his wife over three other children in his will. Testator lived with proponents and they discouraged visits to testator by contestants. One of the proponents drove testator to his lawyer's office to prepare the will and also arranged for witnesses. Testator destroyed his prior will and did not tell others he changed his will. Further, there was evidence he was forgetful, his mind wandered, he had difficulty recognizing persons he knew, and had difficulty in carrying on a conversation. The Supreme Court found that contestants made a close, but submissible case on the issue of undue influence.

Proof that the beneficiary paid the lawyer who drew the will, or that he arranged for and attended conferences at which the will was discussed have been held sufficient evidence of activity in the procurement of the will. If a confidential relationship and benefaction to the fiduciary is established, "a very liberal attitude" is taken regarding the quantum of evidence necessary to "establish that the fiduciary was actively concerned in some way which caused or contributed to cause the execution of the will." *Pasternak v. Mashak*, 392 S.W.2d 631, 637 (Mo.App.1965).

█ Our careful review of the record establishes that although there was testimony favorable to proponents, we are constrained to conclude that taking the contestants' evidence as true, a jury could have concluded that Clara was active in causing the execution of the testator's will.

Testator not only resided with Clara which allowed her opportunity to exercise undue influence but there was evidence that she did not like Kathryne and made it difficult for her to see her father alone. In addition, he was severely ill at the time the will was executed. The most compelling evidence though, is that Clara was physically present at the initial conference with the attorney and that she actively participated in the discussions concerning the disposition of testator's property. A jury could also have inferred from the evidence that Clara paid for the will and retained it in her possession. These facts along with the conceded elements of a fiduciary relationship and benefaction created a case for the jury.

The judgment of the trial court is reversed and the case remanded for a new trial.

SNYDER and CRIST, JJ., concur.