Mona STRAUSER, Personal Representative, Estate of Estelle N. Matthaei, Petitioner–Appellant,

v.

Betty D. DAYTON, Respondent–Respondent.

No. 54163.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 10, 1989.

adverse judgment in the Probate Court on her petition to determine title to personalty brought under § 473.340, RSMo 1986. We affirm.

At issue here is whether the court erred in finding title to decedent's household goods and joint bank account were not in her estate. Decedent had signed a written declaration of gift of the household goods and a bank card creating the joint bank account. Petitioner challenged these transactions as the products of undue influence. At decedent's death the bank account held $2,821 and the household goods were valued at $2,515.

Decedent and defendant met while they were co-workers at Monsanto and became friends; they were friends for over 35 years before decedent died. At the age of 83, while hospitalized, decedent was medically determined to need supervision and was faced with going into a nursing home when discharged. She desired to return home and asked defendant to live with her. Defendant moved in on November 13, 1981, but retained her employment as an executive secretary at McGraw–Edison. Defendant did household chores such as preparing meals and shopping for groceries, and she wrote checks for decedent; she was provided free room and board. Seven months after defendant moved in decedent executed an irrevocable trust her attorney, Mr. Euwer, drafted which provided that defendant would get the house if she resided in it until decedent's death.[1]

Decedent's primary business and legal advisors when the irrevocable trust was drafted were Mr. Euwer and a fellow church member, Mr. Kuester. Mr. Kuester had earlier been instrumental in setting up a revocable trust which primarily benefited decedent's church; it had a corpus of over $300,000 when she died; decedent never married and her nearest heir was a second cousin. It was uncontroverted that, until shortly before decedent died, Mr. Kuester and Mr. Euwer remained her principal financial advisors. Mr. Kuester testified he

William T. Euwer, Clayton, for petitioner-appellant.

John L. Horgan, Laurie A. Scully, St. Louis, for respondent-respondent.

REINHARD, Judge.

The personal representative of the estate of decedent (petitioner) appeals from an

---

1. Mr. Euwer represented the estate at trial and was one of its principal witnesses.

handled decedent's banking affairs until near the time the contested documents were executed and that he learned of the change in the bank account when he found the bank would no longer accept his signature on her checks.

On July 6, 1984, decedent signed a "Declaration of Gift" form giving a set of china to her godchild and the remaining contents of her home to defendant. The form was sent to defendant by an attorney defendant knew personally. Decedent completed and signed the form in the sole presence of defendant. Her godchild testified she knew nothing of the gift of china until after decedent died; she died on November 10, 1984. On July 19, 1984, defendant and decedent signed a new signature card giving them both access to a checking account decedent held at Mark Twain Bank. The card was brought to decedent's house by the bank trust officer who called defendant and requested she go to decedent's home to sign the card. When these gifts were made, decedent was 85 or 86 years of age, and had cancer, diabetes and arteriosclerosis.

The personal representative, a longtime friend of decedent and a legatee under her will, her daughter, Mr. Euwer, Mr. Kuester and one of the private duty nurses testified for petitioner. Defendant and another friend of the decedent testified for the defense.

Petitioner's strongest evidence of decedent's mental condition at or near times the gifts were made came from a rambling letter Mr. Euwer wrote in response to a doctor's request for a psychiatric evaluation of decedent while she was hospitalized in early July of 1984. In the portions of the letter he read at trial, he stated that at or near the times the documents were executed he was of the opinion her mental condition was impaired. He also testified as to legal services he rendered for decedent near the times the documents were executed.

The private duty nurse testified that in July of 1984 decedent had days when her mind was very sharp and others where she was at times confused. She also read portions of the private duty nurses' nursing notes which contained evidence of decedent's mental condition at least up to the month before the documents were executed. She further testified that decedent at various times had commented that defendant was getting too much and that defendant's getting the house was enough. Both defendant and the other defense witness testified that decedent had told them decedent wanted defendant to get the contents of the house. Petitioner stated, "There were times that I had to wonder about her mental capacity for things that she said. Sometimes she was very coherent, sometimes she wasn't; sometimes she thought I was [defendant] when I would go." She further testified that she did not know decedent's mental condition when decedent executed the documents. Mr. Kuester testified that on April 16, 1984, he brought some papers for decedent to sign and on June 6, 1984, decedent signed a document giving him permission to check on her personal affairs.

The only evidence of decedent's mental condition on the day the bank card was signed came from defendant who testified that while the bank trust officer, decedent and defendant were together at decedent's home to sign the card, decedent was very calm, collected and pleasant, and talked, joked and laughed with defendant and the trust officer.

Petitioner's sole point on appeal is that "[t]he trial court erred in rendering judgment that respondent is the donee under a valid declaration of gift because the court erroneously applied the law to the uncontroverted facts in concluding that there was no evidence of undue influence or mental incapacity." Although petitioner's point is confined to the "Declaration of Gift," it appears to us both parties have accepted that petitioner is challenging the decree as to both the gift declaration and the joint

bank account.[2]

Under our standard of review we must affirm the decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *McIntosh v. Dowdy*, 625 S.W.2d 162, 163 (Mo.App.1981). We give deference to the trial court's opportunity to observe the credibility of the witnesses. *Mahler v. Tieman*, 550 S.W.2d 623, 628 (Mo.App.1977). Absent specific findings of fact, we consider all controverted facts as found in accordance with the result reached. *In re Estate of Ferling*, 670 S.W.2d 109, 110 (Mo.App.1984). Here no specific findings of fact were requested and none were made.

We make our review with the following principles of law in mind. To set aside a gift on the ground of undue influence, it must be shown that, at the time of gifting, the donor was acting under such force, coercion or overpersuasion that his free will was destroyed. *See In re Estate of Brown*, 718 S.W.2d 588, 596 (Mo.App. 1986); *see also Flynn v. Union National Bank*, 378 S.W.2d at 10. A petitioner makes a submissible case of undue influence when he presents evidence of a confidential relationship between the benefactor and beneficiary plus other evidence of undue influence; however, undue influence may be shown without establishing a confidential relationship. *McIntosh*, 625 S.W.2d at 163–64. Undue influence is an issue of fact. *Flynn*, 378 S.W.2d at 10. Evidence probative of undue influence includes the mental and physical condition of the benefactor, the beneficiary's power and opportunity to influence the benefactor, and hostile feelings of the benefactor towards the beneficiary. *Carroll v. Knott*, 637 S.W.2d 368, 370–71 (Mo.App.1982). Evidence the beneficiary was active in procuring the benefit is also probative. *In re Estate of Brown*, 718 S.W.2d at 596; *see Carroll*, 637 S.W.2d at 371.

Petitioner seizes upon comments made by the court as a basis for her con-

tention the court erred. However, our reading of all the court's comments in the case leads us to conclude the court made its ruling on the merits after considering all the evidence. We find the following comments particularly enlightening:

> I just don't find that there's really any undue influence here that caused the transfers, and I don't find that [decedent] lacked the mental capacity to make these transfers. She had her moments when perhaps she was confused, but I think—I'm just not *persuaded* that she just, at all times, and in particular the times that these transfers were made, that she did not have that mental capacity.

(Emphasis ours.)

We have reviewed the entire record. Applying the above principles of law to the record, including the trial court's superior position to judge credibility, we conclude the trial court's decree must be affirmed.

JUDGMENT AFFIRMED.

CRANDALL, P.J., and CRIST, J., concur.

---

**2.** Although petitioner's point includes the issue of mental incapacity, our reading of her petition is that she has not alleged a separate ground of mental incapacity as a basis for rejecting the gifts, but, rather, has alleged mental incapacity as a factor showing undue influence.