### WAY v. THE UNION CENTRAL LIFE INS. CO.

1. EQUITY—HUSBAND AND WIFE—FRAUD—FIDUCIARY RELATIONS—BURDEN OF PROOF.—In a transaction between husband and wife in which the husband or his estate has obtained an advantage over the wife, the burden of proof is on the husband, or those representing his estate, to show the utmost fairness in the transaction, and that the wife was fully informed of what she was doing and of its effect.
2. FRAUD—INSURANCE—HUSBAND AND WIFE.—Assignment of insurance policy by wife to husband's estate held without consideration and void.
3. CONSIDERATION—SEAL—EQUITY—CANCELLATION OF WRITTEN INSTRUMENTS.—The rule that a seal imports consideration does not apply in an action in equity to cancel a written instrument

Before BUCHANAN, J., Dorchester, 1900.    Reversed.

Action by Jane O. Way against the Union Central Life Insurance Co. and the executor and children of Joseph A. Way, to set aside assignment of insurance policy. From judgment dismissing the complaint, plaintiff appeals.

*Messrs. Wolfe & Connor,* for appellant, cite: *Was there constructive fraud involved in the assignment of the policy?* Stewart on Hus. & W., 133; 53 S. C., 35; 3 Bail. Eq., 329; 1 Story Eq. Jur., p. 217, *et seq.;* 8 Ency., 1 ed., 644-5; 4 DeS., 684; 1 McC. Ch., 390; 14 Ency., 2 ed., 194-5; 5 Lawson's Rights, Rem. & Pr., 2368; 20 How., 506. *Where fraud is alleged in equity, seal does not import a consideration:* 20 S. C., 504; Clarkson Cont., 83; 18 Pick., 95. *No blame can attach to plaintiff for not reading and finding out purpose and effect of assignment:* 53 S. C., 32; 9 S. C., 20; 71 N. Y., 158; 57 Pa., 120. *Estoppel cannot be set up here:* 35 S. C., 518; 11 Ency., 2 ed., 394, 387; 52 S. C., 396; 13 S. C., 5; 57 S. C., 420.

*Messrs. C. G. Dantzler* and *J. A. Hiers,* contra.

September 10, 1901.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The undisputed facts of this case are as follows: On the 28th of December, 1899, Joseph A. Way, who had been twice married, departed this life, leaving a will, of which the defendant, George H. Way, is the duly qualified executor. After the death of his first wife, the testator took out a policy of insurance on his own life for the sum of one thousand dollars, which by the terms of the policy was made payable to Jane O. Way, his second wife, who is the plaintiff herein, though by the "application" for such policy, it appears that the persons in whose favor the insurance was desired were his wife, "Jane Olivia Way, and children." At the time of his death, the said Joseph A. Way left surviving him the plaintiff herein, his second wife, and her four children, all of whom are minors, the eldest being five years of age; and also five children of his first marriage, three of whom are minors, above the age of fourteen years. All of the surviving children of the first marriage, together with George H. Way, as executor of the will of the said Joseph A. Way, are made parties, defendants, to this action. The testator, by the second clause of his will, gave to his wife, the plaintiff herein, "in lieu of her dower, the dwelling house and ten acres of land upon which I now reside, in Dorchester County, S. C., as long as she remains unmarried; and that, at the marriage of my said wife, all the property here devised to her as aforesaid, I give to her four children in equal shares, and to their heirs and assigns forever." By the third clause of his will he gives to his said wife three hundred dollars out of the insurance on his life. By the fourth clause he directs "that all my personal effects, consisting of a mule and buggy, hogs, household goods and all other property not particularly named, be sold and equally divided among my wife and children except my daughter, Dora Way," who was one of the children of the first marriage. By the fifth clause, he gives to four of his daughters (naming them, but not including Dora,) by his first marriage, six hundred dollars out of the insurance on his life. By the sixth clause he gives to Dora Way, one

of his daughters by his first marriage, twenty dollars out of the insurance on his life. By the seventh clause he devises to the same four daughters a tract of land containing 265 acres, to be equally divided amongst them. This will bears date the 10th day of October, A. D. 1899, and in the absence of any evidence to the contrary (and there is no such evidence), it must be assumed to have been executed on that day. In accordance with the agreement of the parties, the original policy of insurance, bearing date the 27th day of May, A. D. 1896, was placed before the Court at the hearing, together with a copy of the application; and to the policy is attached a formal assignment of the same "to the estate of the said Joseph A. Way," which bears date the 17th day of October, A. D. 1899, and is signed, under seal, by the said Joseph A. Way and Jane O. Way, in the presence of two subscribing witnesses—W. B. Way and G. H. Way. The object of this action is to have the said assignment set aside and cancelled, and to obtain judgment against the said insurance company for the amount due on the said policy. The insurance company has made no defense and has filed no answer. The other adult defendants have answered, contesting the claim of the plaintiff, and demanding that the executor of the will of the said J. A. Way have judgment against the insurance company for the amount due on the policy, and that plaintiff's claim be dismissed. The minor defendants have filed the usual formal answer. An order was granted referring the case to a referee to take the testimony and report his conclusions of law and fact. The testimony as so taken is set out in the "Case" with the referee's report, in which he finds as conclusions of fact that the assignment was valid—that it was supported by a sufficient consideration—that there was no undue influence, fraud or misrepresentation, and that there was no agreement, express or implied, by the plaintiff's husband to pay her the amount of the face value of the policy or any other amount, and as conclusions of law he found that the complaint should be dismissed, and that the executor have judgment against the

insurance company for the amount due on the policy. To this report the plaintiff filed numerous exceptions, and the case was heard by his Honor, Judge Buchanan, on the report and exceptions, who, in a short order, without giving any reasons, rendered judgment confirming the report of the referee. From this judgment the plaintiff appeals upon the several grounds set out in the record, which need not be stated here, as the grounds upon which we rest our conclusion will sufficiently appear in this opinion.

It seems to us that the fundamental error, into which both the referee and the Circuit Judge have fallen, is in overlooking the fact that this is a case in which the court of equity is asked to set aside a transaction between persons sustaining towards each other the close, confidential relations of husband and wife, and in failing to apply the rules applicable in such cases. As is said in I. Story Eq. Jur., sec. 218: "But by far the most comprehensive class of cases of undue concealment arises from some peculiar relation, or fiduciary character between the parties. Among this class of cases are to be found those which arise from the relation of * * * husband and wife * * * In these and the like cases, the law, in order to prevent undue advantage, from the unlimited confidence, affection or sense of duty which the relation naturally creates, requires the utmost degree of good faith (*uberrima fides*) in all transactions between the parties. If there is any misrepresentation, or any concealment of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interpose, and pronounce the transaction void, and, as far as possible, restore the parties to their original rights." Again, in sec. 307, the same distinguished author, in speaking of constructive frauds, arising from some peculiar confidential or fiduciary relation between the parties, says: "In this class of cases, there is often found some intermixture of deceit, imposition, over-reaching, unconscionable advantage, or other mark of direct and positive fraud. But the principle upon which courts of equity act in regard thereto, stands, inde-

pendent of any such ingredients, upon a motive of general public policy; and it is designed, in some degree, as a protection to the parties against the effects of overweening confidence and self-delusion, and the infirmities of hasty and precipitate judgment." So we find in 2 Pom. Eq. Jur., in sections 955-6, that the distinguished text-writer emphasizes the distinction between cases in which there has been undue influence *actually* exerted and cases in which reliance is placed solely upon the existence of confidential or fiduciary relations between the parties, and calls attention to the importance of observing this distinction; and in sec. 956 he uses this language: "The doctrine to be examined arises from the very conception and existence of a fiduciary relation. While equity does not deny the possibility of valid transactions between the two parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption." And in the same section the author quotes with approval the following language used by "a most able Judge," in one of the cases cited in the notes : "The broad principle on which the Court acts in cases of this description is that, wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed, to exert influence over the person trusting him, the Courts will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him." And again, in another note, the author quotes the following language used by Turner, J., in another case, where, after laying down some most important corollaries of the general principle, and distinguishing it from the doctrine concerning

undue influence exerted upon persons weak-minded, etc., he says: "I take it to be a well established principle of this Court, that persons standing in confidential relations towards others cannot entitle themselves to hold benefits which those others may have conferred upon them, unless they can show to the satisfaction of the Court, that the persons by whom the benefits have been conferred had competent and independent advice in conferring them." That this doctrine applies to persons occupying the relation towards each other of husband and wife, is shown, not only by the passage above quoted from Story's Eq. Jur., but also by sec. 963 of 2 Pom. Eq. Jur., at page 496. The rule that, in a case where a transaction between husband and wife whereby the husband acquires an advantage either for himself or his estate comes under review, in a court of equity, the burden of proof is upon the husband, or those who represent his estate, to show the utmost fairness in the transaction, and that the wife was fully advised as to what she was doing, and the effect of it has been fully recognized in this State, in the case of *Butler* v. *Haskell,* 4 DeS. Ch., at page 684, where the learned Chancellor speaks of the rule as "quite clear;" and amongst the authorities which he cites is the case of *Gibson* v. *Jeyes,* 6 Ves., 266, where, at page 278, Lord Eldon characterizes it as "that great rule of the Court," which he states as follows: "that he, who bargains in matter of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence; a rule applying to trustees, attornies, or any one else." See, also, the case of *McCants* v. *Bee,* 1 McC. Ch., 383, where the case of *Butler* v. *Haskell* is distinctly recognized. In 14 Am. & Eng. Ency. of Law, 2d edit., at page 194, it is said: "It is well settled that where it appears that a fiduciary or confidential relation existed between the parties, at the time the transaction alleged to be fraudulent, such as trustee and *cestui que trust* * * * husband and wife * * * or that one of the parties, for any reason, possessed a power or influence over the other * * * the existence of such rela-

tion or such power or influence * * * raises a presumption of fraud, and the burden of proof is upon the party seeking to sustain the transaction. The presumption arises in such cases, not because the Court can see that there was fraud, but because there may have been fraud."

In the light of these well settled principles of law, we proceed to the examination of the testimony. Only two witnesses appear to have been examined at the reference— the plaintiff and R. S. Weeks, the general agent of the insurance company, who seems to have been examined for the purpose of showing that the assignment of the policy had been made known to the insurance company and approved by it. This, no doubt, was for the purpose of meeting the point made below, that the assignment was not in the proper form; but as that point is not made by this appeal, we need not refer to the testimony of Weeks further than to say that he testified that from an experience of twelve or thirteen years in the insurance business, and from his knowledge of the tables of mortality used by the leading insurance companies, the policy now in controversy was, at the time of the assignment, under the circumstances then existing, "worth nearly or the entire face value of the policy to the beneficiary, or the owner of the policy." So that, practically, the entire oral testimony in the case comes from the plaintiff; and although objections were interposed, at the reference, to portions of her testimony, as to which the referee reserved his decision, yet the referee, in his report, says: "I have since decided to admit such testimony, and have marked the objections thereto overruled;" and as there is no exception to such ruling, all of the testimony of the plaintiff must be regarded as competent, at least for the purposes of this case. This testimony shows that the assignment in question was brought to her house by Dr. W. B. Way, a brother of her husband, who was his attending physician; but when he came to bring the assignment, he did not come on a professional visit. When shown the paper, she says: "She recognizes her signature

thereto. I signed the paper at my husband's home. Dr. Way was there, and I think George Way was there, but I am not sure that George Way was there." (But as the name of George H. Way appears as one of the subscribing witnesses, it is but reasonable to suppose that he was there.) "I did not read the paper (assignment) before I signed it. Dr. Way nor any one else did not read this paper for me before I signed it, or after I signed it. I never saw the paper again before to-day (the day of the reference). Dr. Way nor any one else explained to me what the paper contained or what it meant. I did not know what the paper was. No one paid me any money or any consideration when I signed this paper, nor have I received anything since, nor did I receive anything before I signed it, as a consideration for signing it. It was some time after that I discovered that this paper transferred my interest in the life insurance policy. I would not have signed the paper if I had known, at the time, what it meant. For several months before my husband's death I was very much worried in mind and body on account of the serious illness of my husband. During that time I felt sure that he would die, and I did not know how soon. Also the fact that I would have my several infant children dependent on me when my husband died, also increased my troubles. * * * My husband was present when the assignment was signed by me. It was signed in the parlor where my husband was sitting up." This witness further testified as follows: "My husband died with consumption; he was sick with consumption for about two years and a half. He was confined to his bed about a month before his death. He would be sick by spells, and sometimes would be very sick, and then improve and get up. He was quite a sick man for several months preceding his death. During that time I nursed him. * * * Mr. B. W. Muckenfuss drew up the will for my husband. Dr. William Way came with Mr. Muckenfuss when the will was made * * * I knew that my husband had his life insured in the Union Central Life Insurance Company." This testimony stands

wholly uncontradicted, as neither Dr. Wm. Way nor Geo.
H. Way, the trusted brothers of the testator, who were
present and participated in the transaction under considera-
tion, were examined as witnesses, and no reason appears, or
has even been suggested, why they were not examined.
There is another circumstance, not without significance,
which may be mentioned, and that is that, although the will
purports to dispose of the proceeds of the insurance policy,
yet it appears to have been executed seven days *before* the
assignment was executed and, therefore, before the testator
had acquired any right to do so.   This indicates that the
will, containing these provisions, was executed in pursuance
of a predetermined purpose to obtain from the plaintiff the
assignment in question, whereby the testator would be
enabled, practically, to defeat his original intention when
he took out the policy, for then he manifestly intended that
the policy should enure to the benefit of the plaintiff and her
children, for he so declared in writing when he made the
"application" for the policy, as we have seen above; though
when the policy was actually taken out, it, for some unex-
plained reason, was made in favor of "Jane O. Way, his
wife," without mentioning her children.   No reason has
been given or even suggested for this change of plans upon
the part of the testator, which does not appear to have been
communicated to the wife, who was most deeply interested;
and, on the contrary, the most natural inference is, was kept
concealed from her—though it is but reasonable to suppose
that it was communicated to his brothers, who seem to have
been his trusted advisers; and yet neither of them were ex-
amined as witnesses.   In view of all these circumstances,
which are patent upon the face of the papers, and of the
uncontradicted testimony, it is impossible to conceive that
the plaintiff, suffering from the distress and anxiety incident
to the occasion, could have, with a full knowledge of her
rights, voluntarily stripped herself of, practically, all means
for the support of herself and her little children, in the event
of the death, then impending, of her husband and the protec-

tor of herself and little children, without any consideration whatsoever. The testimony shows that she had no other means except a small tract of land, yielding no rent, and worth only the paltry sum of fifty dollars. It is true, that the referee finds, and the Circuit Judge confirms such finding, that the assignment is under seal, which imports a consideration, therefore, it cannot be attacked for lack of consideration. This may be so at law, but not so in equity, at least in a case of this kind; and this is a case on the equity side of the Court—for the cancellation of a written instrument. As is said in 6 Am. & Eng. Ency. of Law, 2 edit., at page 683: "The presence of a seal does not, in equity, import a consideration, but proof of it must be given." See, also, the 14th vol. of the same valuable work, at page 166, where it is said: "In most jurisdictions fraud cannot be pleaded as a defense *in an action* at law on a contract under seal, when it does not affect the execution of the contract, but relates merely to the consideration, though relief may be obtained in equity" (italics ours). Again, at page 199 of the same volume, it is said: "As was shown in a previous section (which has just been quoted), in most jurisdictions fraud cannot be pleaded as a defense in *an action at law* on a contract under seal, when it relates merely to the consideration, but *relief may be obtained in equity;* and at law as well as in equity fraud may be shown where it relates to the execution of the contract. When fraud can be shown, according to these rules, it may be shown by parol evidence, notwithstanding the contract is both in writing and under seal" (italics ours). Certainly the finding by the referee and affirmance by the Circuit Judge that the fact that the assignment "was made in favor of her husband's estate and presumably at her husband's request," constitutes sufficient consideration to support the assignment, even if the papers had not been under seal, cannot be supported; especially in view of the very meagre provision made for the wife in the husband's will; for by the will she gets nothing but the dwelling house and ten acres

of land, "as long as she remains unmarried;" and that, too, in lieu óf her dower in 275 acres of land, and an equal share of the paltry amount of the personal property, for the $300 out of the insurance money, to the whole of which she was already entitled, certainly cannot be regarded as anything more than the pretense of a benefaction to the wife. It is clear, therefore, that the exceptions raising these points must be sustained.

The referee also finds, and the Circuit Judge sustains him in so finding, that there is no testimony to sustain the allegations of undue influence, fraud and misrepresentations, and, therefore, that the complaint should be dismissed. This finding, as we have indicated above, is based upon an entire misconception of the rule applicable to a case like this, which places the burden of proof upon the husband, or those who represent his estate, to show the utmost good faith (*uberrima fides*) in the transaction which this Court has been called upon to review—a transaction by which the husband acquired for his estate all the advantage, and the wife suffered all the disadvantage; in which case, as we have seen, the presumption is that there was fraud, undue influence and concealment; and it is incumbent upon those who seek to avail themselves of such advantage to show to the satisfaction of the Court that such presumption is not well founded. This the defendants have not only failed to do, but have failed to make any attempt to do, as they offered no testimony whatever as to that matter, although they had the means of explaining fully the whole transaction (of which they have not availed themselves) by examining as witnesses the two brothers of the testator, who were present at and, to some extent at least, participated in, the transaction which is here assailed. The exceptions raising the point last considered must, therefore, be sustained.

We are of the opinion that the plaintiff has shown herself entitled to a decree for the cancellation of the assignment hereinabove referred to, and to judgment against the insur-

ance company (who has made no defense), for the full amount due on the policy of insurance.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with instructions to carry out the views herein announced.

MR. JUSTICE POPE, *concurring in the result.* I think the plaintiff's minor children may have rights in the policy, as they were named as *beneficiaries* along with the plaintiff in the application for insurance.