7966

### DEVLIN v. DEVLIN.

1. Fraud—Deeds.—There was evidence in this case tending to show fraud and undue influence on the part of a brother in procuring two deeds from an aged and infirm sister dependent on him for advice and in whom she had much confidence.

2. Ibid.—Trust.—Where there is a relation of trust and confidence between a brother and an aged and infirm sister and he procures deeds from her executed in her last illness, executed in presence of two of his sons and drawn by one of them, the principle that the law presumes fraud where the relation of trust and confidence exists applies.

3. Ibid.—Deeds.—Keeping the deeds from record until after death of grantor although within the forty days then allowed by law for recording is a circumstance to be considered by the jury in considering the *bona fides* of the deeds.

4. Ibid.—Ibid.—Dating deeds in January executed in March, ten days before death of grantor, and then probably when she is in extremis, affords grounds for an inference that they were never delivered.

5. Juror.—It is not an abuse of discretion to excuse a juror who says he has formed an opinion about a case and that it would take evidence to remove it, although he thought he could render a verdict according to the law and evidence.

Before C. C. Featherstone, Special Judge, Abbeville, Fall term, 1910. Affirmed.

Action by W. P. Devlin, individually, and as administrator of Sallie M. Devlin *et al.* against R. Hillory Devlin, individually, and as administrator of Sallie M. Devlin *et al.* Defendant, R. H. Devlin, appeals.

*Messrs. Wm. N. Graydon* and *D. H. Magill,* for appellant. *Mr. Graydon* cites: *Law does not presume fraud:* 14 Ency. 190. *No presumption of fraud:* 85 S. C. 329. *Contract being regular burden is on assailant:* 44 S. C. 378; 10 S. C. 445.

*Messrs. F. B. Gary, Wm. P. Greene* and *Grier & Park,* contra. *Mr. Greene* cites: *Burden of showing bona fides of*

*deeds is on appellant:* 82 S. C. 199; 2 Pom. Eq. Jur., secs. 955-9, 296; 4 Des. Ch. 684; 6 Ves. 366; 1 McC. Ch. 383; 14 Ency. 194. *Standing juror aside is within discretion of trial Judge:* 16 S. C. 459; 54 S. C. 151; 65 S. C. 244.

July 11, 1911. The opinion of the Court was delivered by;

MR. JUSTICE HYDRICK. This action was brought for the partition of two tracts of land among the heirs of Sallie M. Devlin, and involves the validity of two deeds, alleged by the defendant, R. H. Devlin, to have been executed and delivered to him by Sallie M. Devlin, on 31st March, 1905, ten days before her death, which occurred 10th April, 1905, under which he claims to be the sole owner of both tracts. Plaintiffs allege that these deeds were never, in fact, executed and delivered; but if so, that they were obtained by fraud and undue influence practiced upon the grantor by the grantee. The verdict and judgment were in favor of plaintiffs.

Sallie M. Devlin was an unmarried woman between sixty-five and seventy years of age. For years, she lived on one of the tracts in dispute near her brother, the defendant, R. H. Devlin. She had confidence in him and trusted him to a considerable extent with the management of her affairs, in which he was her general adviser and often acted as her agent. She was fond of him and of his family. He, in turn, was kind to her and considerate of her and her interests, and devoted much of his time to looking after her welfare and business. Some of the witnesses said that she always spoke of him in terms of affection, and said that he was her sole dependence, and that she intended for him and his family to have her property. The testimony tends to show that the same cordial relations did not exist between her and her only other brother, the plaintiff, W. P. Devlin, though the relations between them were not exactly unfriendly. The relations between her and one or more of her sisters, while not unfriendly, were a little cool. She

seemed ordinarily fond of her other sisters and more fond
of the youngest than of any of the others.   She was in fail-
ing health for a year or, perhaps, longer before she died.
Her decline was most marked and rapid after the first of the
year 1905.   From that time till her death, she was almost
continually under the care of a physician.   At times, she
suffered intense physical pain, which, for the time, unnerved
her, and for which morphine was occasionally administered
—though there was no evidence that she was under the influ-
ence of that drug when the deeds were executed.   Some of
the plaintiffs testified that defendant had such influence over
her that, when he was present, she treated them indifferently,
while she treated them affectionately when he was not pres-
ent.   The deeds bear date January 5, 1905, although,
according to the testimony of defendant's witnesses, they
were not actually executed until 31st March, 1905.   The
defendant's son who drew them testified that they were ante-
dated according to the direction of the grantor, because, she
said, she had given the land to the defendant on that day.
The consideration expressed is $600 for the 86 acre tract
and $2,500 for the 370 acre tract.   There was testimony
that they were worth twice that amount.   Defendant admits
that no consideration was, in fact, paid other than the kind-
ness which he had previously shown to his sister and the
time and attention which he had devoted to her and her
affairs.   The deeds were drawn by one of defendant's sons
and witnessed by two others, one of whom was grantor's
physician, then paying her a professional visit, and, accord-
ing to their testimony, there was no one present when they
were executed, except the grantor and grantee and members
of his family, and a negro girl, who was a servant of the
grantor.   There was testimony that the grantee's son, who
drew the deeds, left his aunt's house on the night of March
30th, accompanied by a negro, and went to his home in Ver-
dery, several miles distant, where he procured blanks and
prepared the deeds and sent them back to his aunt's by the

negro, who arrived there between 2 and 3 o'clock that night. On the morning after the funeral, defendant left his home at daylight and drove ten miles to Abbeville, arriving there a little after sunrise, and went to the residence of his attorney to consult him about the deeds, the existence of which had not been made known to any one outside of his immediate family, notwithstanding inquiries had been made of him by his brother and several of his sisters as to what disposition their sister Sallie had made of her property.    They were not informed of the deeds, until they were spread upon the records, on April 19, 1905.  In response to their inquiries, he told them that he paid her the consideration expressed in the deeds.    On being asked what she had done with the money, he said it might be in bank somewhere, or it might be sewed up in a featherbed, or she might have given it to his sons.    The evidence contains a good many other circumstances which are relied upon by the plaintiffs to show fraud and undue influence, but the foregoing statement of it is sufficient to show clearly that there was no error in refusing defendant's motion for nonsuit and for the direction of a verdict in his favor, made upon the ground that there was no evidence tending to show fraud or undue influence in procuring the deeds.

The Court charged the jury that, where confidential relations exist between persons, the law looks with suspicion upon any transaction between them whereby the superior gains an advantage to himself over the other, and, if a fiduciary relation existed between Miss Sallie Devlin and the defendant when the deeds were executed, they were presumptively fraudulent, and the burden was upon the defendant to show that the transaction was free from fraud, and that the grantor executed them of her free and independent will and judgment, without being improperly or unduly influenced to do so by him.    The appellant contends that this was error : 1. Because it was a charge on the facts,—telling the jury what weight to give the evidence;

2. Because the law does not presume fraud, but requires him who alleges it to prove it; 3. Because it transferred the burden of proof from the plaintiffs, who allege fraud, to defendant and required him to prove a negative; 4. Because proof that one person is merely the agent of another does not establish such a relation of trust and confidence as will raise a presumption against or cast a suspicion upon transactions between them.

We cannot see that the charge in any way involved the facts. It merely stated a principle of law,—that proof of the existence of a relation of trust and confidence between parties, gave rise to a presumption as to certain transactions between them.

No doubt, as a general proposition, the rule is, as stated by appellant, that fraud will not be presumed, but who alleges it must prove it. But that rule, like all general rules, has its exceptions, and the principle announced in this case is one of the exceptions. When the facts proved or the relation established raise a presumption against the validity of the transaction assailed, unless the presumption is rebutted, the transaction must fall. Hence, the effect of the presumption is to shift the burden of proof. The mere fact that one has been the agent of another will not of itself raise a presumption against or cast suspicion upon transactions between them wholly disconnected with the subject of the agency. But where, by reason of the relationship, the agent acquires particular knowledge with regard to the subject of the agency, or gains a peculiar and special influence over his principal, transactions between them with regard to the subject of the agency in which the agent gains an advantage over his principal fall within the rule. The presumption will be strong or weak according to the character and situation of the parties, and the character of the relationship between them. These principles are well settled by our own decisions. In *Way* v. *Ins. Co.,* 61 S. C. 501, 39 S. E. 742, the

relation was that of husband and wife; in *Tindal* v. *Sublett,* 82 S. C. 199, 63 S. E. 960, it was that of principal and agent coupled with that of mother-in-law and son-in-law, with whom the mother-in-law resided. In *Craddock* v. *Weekly,* 85 S. C. 329, 67 S. E. 308, it was applied in a transaction between an aged and widowed mother and her daughters and their husbands. In that case, it was held that the evidence rebutted the presumption. In this case, the relation between the parties was not only that of principal and agent in a general way, but it was also that of an aged sister and a brother in whom she had great confidence and upon whom she felt dependent for advice in the management of her affairs. The principle is applicable wherever there is a relation of trust and confidence, no matter from what cause it arises.

The defendant requested the Court to charge: "That at the time the deed here in question is alleged to have been executed, any person procuring a deed had forty days in which to record the deed, and if the defendant had said deed recorded within forty days after its execution, that circumstance can have no legal weight in this case." The Court properly refused to charge that the circumstance could have no weight, because withholding them from record, until after the death of the grantor, was a circumstance which the plaintiffs had the right to have the jury consider, and the charge requested would have withdrawn it from their consideration. The immediate record of the deeds would, just like any other act of the parties in connection with the transaction, have afforded a circumstance for the consideration of the jury, whose province it was to draw the proper inferences from all the facts and circumstances.

Appellant alleges error in that the Court charged on the subject of the delivery of deeds when there was no evidence of want of delivery. If so, the error was harmless. But

there was reasonable ground for an inference that the
4    deeds were not delivered in the lifetime of the
grantor. The fact that they were dated in January,
and admitted by defendant not to have been in his possession
until March 31, 1905,—just ten days before the death of the
grantor and when she may have been *in extremis,* affords
reasonable ground for such an inference.

The record shows that the case had been tried three times,
this being the fourth trial. The Court therefore inquired of
the jurors if any of them had formed any opinion as to the
     case. Two of them said they had and that their
5    opinion was of such a nature that it would require
evidence to remove it, though they both thought they
could render a verdict according to the law and the evidence.
The Court, nevertheless, excused them. Matters pertaining
to the trial rest in the sound discretion of the trial Court,
and this Court will not interfere unless it is made to appear
that that discretion has been abused. We think it was wisely
exercised in this case. Parties to an action have no right to
any particular juror or jurors. They have not the right to
select, but merely the right to reject any number for cause
and the number allowed by statute peremptorily.

Affirmed.