**Dennis E. McINTOSH, Administrator of the Estate of Lucie Sonia Burch, Deceased, et al., Appellants,**

v.

**Jimmy O'Dell DOWDY, et al., Respondents.**

**No. 42637.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 15, 1981.

Dennis E. McIntosh, Farmington, for appellants.

David L. Mayhugh, Flat River, for respondents.

REINHARD, Judge.

Plaintiffs appeal from an adverse judgment in an action to cancel a deed for fraud, undue influence, and lack of mental capacity. On appeal, plaintiffs contend that the court's judgment was against the weight of the evidence. We disagree, however, and hence we affirm.

■ Our review of court-tried cases is governed by the standards set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976): "(T)he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* at 32.

Lucie Sonia Burch, plaintiffs' decedent, executed the deed in question on August 26, 1978. It conveyed her house to defendants reserving for her a life estate. Plaintiffs are Dennis McIntosh, Administrator of Mrs. Burch's estate, Sterling C. Burch, Mrs. Burch's husband, and Marcel Quesnell, Mrs. Burch's brother. Mr. Burch and Mr. Quesnell are Mrs. Burch's sole devisees and legatees under her will.

Mrs. Burch was 78 years old in July of 1978 when she fractured her hip and was hospitalized. She spent several weeks in the hospital. Her doctor recommended that, after her release from the hospital, she receive care during her recovery. Because Mr. Burch, who lived at the Burch house, was unable to care for her, a patient representative at the hospital helped to place Mrs. Burch in defendants' boarding home.

While at defendants' boarding home, Mrs. Burch was unable to walk or clothe herself, but she was able to feed herself. She required daily insulin shots and a diabetic diet. Defendants charged $300 per month. Mrs. Burch had income of roughly $120 per month. The evidence indicates Mrs. Burch was only able to pay $100 the first month. Defendants had the deed to Mrs. Burch's house drawn up to secure payment for their services, and in exchange agreed to care for Mrs. Burch for the rest of her life. Their agreement in this respect was expressed in a written contract admitted into evidence, signed by defendants, and executed four days after execution of the deed (August 30). The deed reserved to Mrs. Burch a life estate in the property.

On August 26, defendants took the deed to Mr. Burch who was in the hospital. Mr. Quesnell was present. The notary who witnessed the signing asked Mr. Burch whether he knew that the deed would convey the house in exchange for the care of Mrs. Burch. He replied he had no money with which to pay for her care and he signed the deed.

Defendants then took the deed to Mrs. Burch who was at defendants' boarding home. The notary asked Mrs. Burch before she signed whether she realized she was conveying away her home. Mr. Quesnell broke in and spoke to her in French. Mrs. Burch then responded to the notary, "Yes, I understand."

Mrs. Burch lived at defendants' boarding home until her death on April 30, 1979.

Plaintiffs' challenge on appeal goes only to the undue influence allegation. Their contention is that the evidence established a presumption of undue influence. "A presumption of undue influence arises where the evidence adduced shows a confidential or fiduciary relationship coupled with evi-

dence of facts or circumstances showing undue influence." *Bolin v. Anders,* 559 S.W.2d 235, 241 (Mo.App.1977).

■ Plaintiffs contend that the existence of a confidential relationship was proved by the evidence showing that Mrs. Burch was dependent upon defendants for the necessities of life. When a relationship does not necessarily depend on confidential communications, such as are necessary to the relationship between priest and penitent or attorney and client, some proof is required that trust was actually reposed. Such proof is often accomplished by a showing that one entrusted the handling of property or business affairs to the other. "A confidential relationship exists when one relies upon and trusts another in regard to the handling of property and business affairs, thus creating some fiduciary obligation." *Davis v. Pitti,* 472 S.W.2d 382, 387 (Mo.1971). There was no evidence that defendants handled any property or business affairs for Mrs. Burch. Plaintiffs correctly assert that the handling of business affairs is not required in every confidential relationship; still, that does not dispense with the need of some proof that Mrs. Burch took defendants into her confidence. Defendants were strangers to Mrs. Burch when she entered their boarding home and no evidence was offered that she had ever taken them into her confidence during the weeks she stayed with them before she executed the deed. We are unwilling to hold that the sole fact that defendants cared for Mrs. Burch for that time is sufficient to establish a confidential relationship.

■ Undue influence can nonetheless be proved in the absence of a confidential relationship. On the question of whether undue influence was exerted, some factors which have proved important are: The mental and physical condition of the grantor, *Davis v. Pitti,* 472 S.W.2d at 388; whether independent advice was available to the grantor, *Steller v. Steller,* 401 S.W.2d 473, 479 (Mo.1966); whether the grantee concealed the existence of the conveyance, *Id.*; the consideration given for the conveyance, *Drake v. Greener,* 523 S.W.2d 601,

606–07 (Mo.App.1975); whether the dispository scheme of the grantor was disrupted, *Welpton v. Jameson,* 266 S.W.2d 594, 596 (Mo.1954); whether the grantee was a natural object of grantor's bounty, *Bolin v. Anders,* 559 S.W.2d at 242; and any other facts that would tend to show actual coercion or fear, *Steller v. Steller,* 401 S.W.2d at 479.

■ While the evidence is clear that Mrs. Burch was physically dependent at the time of the conveyance, the evidence conflicts as to her mental condition. Defendants presented testimony of her doctor of fifteen years, who visited her just three days prior to the execution of the deed. He found no evidence of mental incompetence at or prior to that time. The county nurse visited her several times in the months of August and September, both before and after the execution of the deed. She saw no evidence of mental incompetence. The notary present at the execution of the deed testified she spoke with Mrs. Burch and was satisfied that she knew what she was doing.

We find to be significant the fact that Mr. Quesnell, Mrs. Burch's brother and plaintiff here, was present when Mrs. Burch signed the deed, and spoke with her. He was free to give her advice and she could have told him of any influence being exerted upon her. The two spoke in French and there is no indication that any of the other parties involved could understand what was said. Further, Mr. Quesnell's presence, and Mr. Burch's participation in the execution of the deed, show that defendants were not concealing the existence of the conveyance.

Consideration was given in exchange for the deed in the form of the promise to care for Mrs. Burch for the rest of her life. This was apparently the only way Mrs. Burch could pay for the care. This tends to eliminate the significance of the fact that grantees were not otherwise natural objects of grantor's bounty. And while Mr. Burch would ordinarily be considered a natural object of Mrs. Burch's bounty, the record contains evidence of a falling out between them and of Mrs. Burch's desire that he not receive any of her property.

In sum, we feel the trial court's decision was supported by substantial evidence and was not against the weight of the evidence. The court's judgment does not erroneously declare or apply the law.

Judgment affirmed.

DOWD, P. J., and CRIST, J., concur.