22805

Raymond Elmo BULLARD, Individually, and as Executor of the Last Will and Testament of Georgia Ruth Bullard, Appellant v. Steve CRAWLEY, Karen Crawley, Pat Mickey Bullard, and Grant Bullard, Defendants, of whom Steve Crawley and Karen Crawley are Respondents, and of whom Pat Mickey Bullard and Grant Bullard are also Appellants. Appeal of Pat Mickey BULLARD and Grant Bullard.

(363 S. E. (2d) 897)

Supreme Court

*Willard D. Hanna, Jr.,* and *Dennis H. Smith,* of *Joseph, Harris, Hanna & Corbett,* Surfside Beach, *for appellant Raymond Elmo Bullard.*

*Linda Weeks Gwin,* of *Thompson, Henry & Gwin,* Conway, *for appellants Pat Mickey Bullard* and *Grant Bullard.*

E. *Windell McCrackin*, of *McCrackin & Barnett*, Myrtle Beach, *for respondents.*

Reheard June 10, 1987.

Decided Nov. 23, 1987.

*Per Curiam:*

Georgia Ruth Bullard brought this action to set aside two deeds executed in favor of Steve and Karen Crawley. Mrs. Bullard died during the pendency of the litigation and her executor was substituted as plaintiff. The case was referred to a master, who set aside the deeds based upon findings of a breach of confidential relationship and undue influence. The circuit court held there was no confidential relationship between Mrs. Bullard and the Crawleys, and there was no proof the deeds were executed under undue influence, duress or coercion. Accordingly, the court ruled in favor of the Crawleys. We affirm.

An action to set aside deeds is a matter in equity. ■ ■ *Smith v. McClam*, 280 S. C. 398, 312 S. E. (2d) 260 (Ct. App. 1984). In an action in equity where the circuit judge and the master are in disagreement as to findings of fact, this court may make findings in accordance with its own view of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

Mrs. Bullard operated a guest home in Myrtle Beach. Karen Crawley (Karen) met Mrs. Bullard while staying as a guest in the home in 1969. She and her husband returned for vacations each year and a friendship developed.

In 1980, Mrs. Bullard became ill and was hospitalized for congestive heart failure. She was 71 years old at that time. On August 27, 1980, Karen came to Mrs. Bullard's home to care for her. She acted as Mrs. Bullard's physical helper, doing housework, shopping and driving. In return Karen received a salary and room and board for herself and her daughter.

Prior to February 1981, Karen had conversations with Mrs. Bullard's physician and with a close friend of Mrs. Bullard's in which she expressed concern that she would not receive any property from Mrs. Bullard's estate. She told

them she would not continue caring for Mrs. Bullard unless she got some "concrete papers."

On February 1, 1981, Mrs. Bullard, while in the hospital, executed a will which was witnessed by her doctor and a nurse. In this will all of Mrs. Bullard's property, real and personal, was left to the Crawleys. According to these two witnesses, Mrs. Bullard was of sound mind and knew what she was doing at the time. She was discharged from the hospital on February 2.

The deeds in question were executed on February 2 and 3, 1981, at the law offices of H. V. Bellamy, Jr. They conveyed fee simple title in two parcels of realty to Steve and Karen Crawley, reserving life estates in Mrs. Bullard. The consideration recited was $5.00, love and affection. It may be inferred that part of the consideration was Karen's agreement to care for Mrs. Bullard. All the witnesses concluded Mrs. Bullard understood what she was doing when the deeds were executed, and was under no duress.

Thereafter, however, Mrs. Bullard had a change of heart and became upset over what she had done. Karen initially agreed to reconvey the property to Mrs. Bullard, but later changed her mind. She left Mrs. Bullard's and returned to her home in North Carolina.

The evidence relevant to Mrs. Bullard's state of mind at or about the time the deeds were executed may be summarized as follows:

> (1) Testimony of Peter Salussolia, who testified: that he was a neighbor of Mrs. Bullard's for about thirty years; that he saw her frequently until just prior to her death; that Mrs. Bullard was strong-willed throughout the period he knew her; that a friendly relationship between Mrs. Bullard and Karen existed; that Karen performed menial tasks for Mrs. Bullard; that Mrs. Bullard stated several times that "I don't know what I'd do without her"; that this statement was made after the will and deeds were executed but prior to Karen's return to North Carolina; that he told Mrs. Bullard "she was a damn fool to let the girl go" because "she needed somebody there to take care of her and Karen was doing a good job."

(2) Testimony of Evelyn Churchill, Mrs. Bullard's hairdresser, who testified: that she had known Mrs. Bullard since 1973; that in 1980 Mrs. Bullard called upon her to come to the hospital and take her home; that she later met Karen, at which time Mrs. Bullard stated that she had known Karen for a long time and that Karen was going to stay with her; speaking of Mrs. Bullard, Mrs. Churchill testified "I think she was very independ-. dent, strong-willed, straight-forward person is what I think about her, outspoken"; that Mrs. Bullard had stated Karen "agreed to stay with her because she didn't want to see her put in a nursing home; I don't know—there was a big discussion about being put in a nursing home, and Karen offered to stay with her"; that Karen did not exercise duress over Mrs. Bullard, who was in her right mind on the occasions that she saw her.

(3) After the deeds were executed, Mrs. Eleanor Schiller, a social worker at Grand Strand General Hospital, saw Mrs. Bullard on several occasions during her final hospitalization. On the dates that Mrs. Schiller saw her, Mrs. Bullard knew what she was doing.

(4) On February 9, 1981, Mrs. Bullard executed another will at the residence of Dr. G. P. Joseph, in the presence of Kathleen Bullard, in which she left her property to her late husband's relatives. At that time Dr. Joseph found her to be "lucid and rational" and testified that he had no reason to believe she was in a different state of mind the week before when she executed the deeds.

(5) Mrs. Bullard was quite independent in January prior to the deeds' being executed in February, as shown by Dr. McKay's testimony wherein he stated that she "kicked Dr. Jordan out of the room."

## UNDUE INFLUENCE

Undue influence in the procurement of a deed may be shown in two ways. The party challenging the deed may show the existence of a confidential relationship between the grantor and the grantee. Once a confidential relationship is shown, the deed is presumed invalid. The burden then shifts to the grantee to affirmatively show the

absence of undue influence. 23 Am. Jur. (2d) *Deeds* § 204 (1983). *See also Hodge v. Shea*, 252 S. C. 601, 168 S. E. (2d) 82 (1969); *Page v. Lewis*, 209 S. C. 212, 39 S. E. (2d) 787 (1946).

However, a finding of undue influence is not dependent upon the existence of a confidential relationship. 23 Am. Jur. (2d) *Deeds* § 204 (1983). *See also Byrd v. Byrd*, 279 S. C. 425, 308 S. E. (2d) 788 (1983). When no confidential relationship is alleged, the party challenging the deed must present evidence which "unmistakenly and convincingly" shows the grantor's will was overborne by the grantee or someone acting on his behalf. *In re Will of Smoak*, 286 S. C. 419, 334 S. E. (2d) 806 (1985). Thus, the determination of whether a confidential relationship existed also determines which party has the burden of proof on the issue of undue influence.

A confidential relationship arises when the grantor has placed his trust and confidence in the grantee, and the grantee has exerted dominion over the grantor, *Page v. Lewis*. The essence of the relationship is the trust and confidence. 15A C. J. S. *Confidential*, pp. 351-58 (1967). Mere friendship between the parties is not sufficient. The relationship must be one implying confidence. 25 Am. Jur. (2d) *Duress and Undue Influence* § 44 (1966). A confidential relationship does not necessarily arise when the grantor depends upon the grantee for the necessities of life. Some evidence is required that the grantor actually reposed trust in the grantee in the handling of his affairs. *McIntosh v. Dowdy*, 625 S. W. (2d) 162 (Mo. Ct. App. 1981) [holding valid deed from grantor to the operators of nursing home in which grantor lived prior to death.].

The record shows clearly that Mrs. Bullard was dependent upon Karen Crawley for many things. However, there is little, if any, evidence that a relationship of trust and confidence existed between them.

We agree with the trial judge that no confidential relationship existed between Karen and Mrs. Bullard. The burden was therefore on appellants to establish undue influence. This requires a showing that the grantor was unquestionably susceptible to undue influence as a result of her physical or mental condition or for some other reason. Clear evidence of opportunity and disposition by the

grantee or someone acting for him to influence the grantor must be present. *Hemingway v. Small*, 284 S. C. 42, 324 S. E. (2d) 335 (Ct. App. 1984); *Atkinson v. Belser*, 273 S. C. 296, 255 S. E. (2d) 852 (1979).

There is no doubt Mrs. Bullard was in poor health when she executed the deeds. However, both before and after the deeds were executed, Mrs. Bullard was an independent person who relied solely upon herself to conduct her business affairs. When she decided she wanted the conveyances to the Crawleys cancelled, she reacted responsibly, discussing the matter with Karen and going to a lawyer's office to review the matter. Mrs. Bullard commenced this action to revoke the deeds herself. While the evidence may suggest that Karen influenced Mrs. Bullard, it falls far short of the proof required for *undue* influence.

Affirmed.

HARWELL and FINNEY, JJ., dissent in separate opinion.

FINNEY, Justice, dissenting:

I dissent. It is my view that the facts of this case are adequate to show a confidential relationship and the exercise of undue influence sufficient to require that these deeds be set aside.

On the way home after Mrs. Bullard was released from the hospital on February 2, 1981, Mrs. Crawley drove Mrs. Bullard to an attorney's office. A frail Mrs. Bullard, sitting in the car in the parking lot, executed a deed and a will conveying her property to the Crawleys. Shortly thereafter, Mrs. Crawley discovered that all of Mrs. Bullard's property was not included in the deed. She carried Mrs. Bullard back to the law office the next day, and Mrs. Bullard executed a second deed transferring the remainder of her property to the Crawleys, reserving a life estate to herself.

On February 6, 1981, upon realizing the consequences of her action, Mrs. Bullard became very upset. She telephoned her friend, Mrs. Macy Alford, who found Mrs. Bullard in such a distraught condition—loss of breath and crying—that she drove Mrs. Bullard to a physician. Upon returning from the doctor, Mrs. Bullard confronted Karen Crawley and emphatically indicated that it was not her desire or

intent to convey the property to the Crawleys. Karen Crawley agreed to reconvey the property to Mrs. Bullard; and the two, accompanied by Mrs. Alford, went to the law office to recover the deeds. They were informed that the deeds had been filed with the Clerk of Court and another deed would have to be drawn to effect the reconveyance. Upon being advised that no attorney was available to prepare a deed, Mrs. Crawley signed a paper agreeing to reconvey the property. Mrs. Crawley and Mrs. Bullard agreed to return to the law office that afternoon so that Mrs. Crawley could execute a deed reconveying the property to Mrs. Bullard. Later that same day Mrs. Crawley surreptitiously returned to North Carolina and subsequently refused to reconvey the property.

## CONFIDENTIAL RELATIONSHIP

It is not necessary that the parties be related by blood or that a formal agency relationship exist in order to establish a confidential relationship. Such a relationship may exist between non-blood related individuals depending on the circumstances of each case. The relationship and duties involved need not be legal, but may be moral, social, domestic or merely personal. *See e.g., Hodge v. Shea,* 252 S. C. 601, 168 S. E. (2d) 82 (1969); *see also,* 26A C. J. S. *Deeds,* § 193.

> A confidential relationship exists between grantor and grantee wherever there is a trust reposed by the former and dominant influence obtained by the latter, irrespective of the formal fiduciary character of their relationship. The existence of a confidential relationship between the parties demands close scrutiny of a deed executed by the subservient grantor and may render it invalid for presumed undue influence when otherwise it would be sustained, although deeds between those in a confidential relationship will be upheld if fair and expressive of the free will of the grantor.

*Page v. Lewis,* 209 S. C. 212, 39 S. E. (2d) 787, 799 (1946), quoting 26 C. J. S. *Deeds* § 63.

Where a confidential relationship is established, a presumption is raised against the validity of the conveyance, and the burden is on the grantee to show that the transac-

tion was equitable and not the result of undue influence. *Way v. Union Cent. Life Insurance Co.*, 61 S. C. 501, 39 S. E. 742 (1901); *Devlin v. Devlin*, 89 S. C. 268, 71 S. E. 966 (1911). The presumption may be strong or weak according to the character and situation of the parties and the nature of the relationship between them. *Devlin, supra.*

In my opinion, the evidence in this case more than adequately establishes that a confidential relationship existed between Karen Crawley and Georgia Bullard. For instance, Mrs. Crawley was the sole provider of assistance to Mrs. Bullard during her protracted illness. She was responsible for supervising Mrs. Bullard's daily activities as well as conducting her financial and business transactions. Under the circumstances of this case, Mrs. Bullard's illness and her subsequent reliance upon Mrs. Crawley to manage her affairs is sufficient evidence to establish trust and confidence and the existence of a confidential relationship.

## UNDUE INFLUENCE

Under the law, upon a finding of the existence of a confidential relationship, the burden shifts to the grantee to prove that no undue influence was exerted to secure the deed. *Way v. Union Cent. Life Insurance Co., supra.* The evidence reveals that (a) the grantor was unquestionably susceptible to undue influence as a result of age and mental and physical infirmities; and (b) there is clear and convincing evidence of the grantee's opportunity and disposition to influence the grantor.

It is an established principle of equity that the acts and contracts of persons who are of weak understanding, and thereby subject to imposition, will be closely scrutinized by the courts to discover whether or not undue influence was exerted or any confidence betrayed to the prejudice of the weaker party or of the one reposing such trust and confidence. *Baynard v. Ulmer*, 153 S. C. 100, 150 S. E. 610 (1929).

Undue influence invalidates a deed procured by wrongful influence exerted over the grantor so as to destroy free agency and constrain a person to act against his will. *Page v. Lewis, supra.* It is not material how such control was exercised, whether by physical force, threats, importunities, or any other form of mental or physical coercion, provided that

it was exerted to destroy freedom of action, and the act was not the grantor's true will. *Baynard v. Ulmer, supra.*

The fact that Mrs. Bullard heeded Mrs. Crawley's threats of abandonment if Mrs. Crawley did not get "concrete papers" is credible and convincing evidence that she exerted dominion over Mrs. Bullard. During Mrs. Bullard's physical infirmity and accompanying apprehension, she acquiesced and deeded her property to Mrs. Crawley. The deed was executed immediately after Mrs. Bullard was released from the hospital as she sat outside the lawyer's office, possibly in a nightgown, in a vehicle operated by Mrs. Crawley.

## CONCLUSION

Notwithstanding the firm legal ground upon which I would reverse the circuit court's ruling, I feel compelled to point out two additional areas of particular concern.

First, the majority draws the inference that an additional consideration for the deeds from Mrs. Bullard to Mrs. Crawley might be Karen Crawley's agreement to care for Mrs. Bullard. This is incongruous in view of two facts: (1) Consideration is not an issue before the court and has no bearing upon the issues of a confidential relationship or undue influence; and (2) this same majority opinion recites that Karen Crawley received a salary and room and board for herself and her daughter, which was the agreed consideration for her services.

Second, the majority relies upon the testimony of Peter Salussolia as evidence of Mrs. Bullard's sound state of mind. This witness is quoted as saying "she needed somebody there to take care of her...." Further, they rely upon Dr. McKay's testimony that in January, she (Mrs. Bullard) "kicked Dr. Jordan out of the room." Clearly, the testimony of Peter Salussolia and Dr. McKay indicate that Mrs. Bullard was unable to care for herself because of her physical and mental condition and was susceptible to undue influence rather than having a strong, independent will as the majority suggests.

My analysis of the record shows that there was ample evidence to support the findings of the master-in-equity that Mrs. Bullard was unduly influenced by Mrs. Crawley. Further, the record reveals that the Crawleys' evidence was

insufficient to rebut the presumption that Mrs. Crawley exerted undue influence upon the grantor. Accordingly, I would reverse the order of the circuit court and set aside the deeds to the respondents Steve Crawley and Karen Crawley.

HARWELL, J., concurs.