THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Mary Jones Mack, Personal Representative of the Estate of Leroy Mack, Appellant.
 v.
 
 Philip Leroy Mack, Respondent.
 
 
 

Appeal From Charleston County
 Mikell R. Scarborough, Master-in-Equity
Unpublished Opinion No. 2007-UP-330
Submitted May 1, 2007  Filed June 26, 2007
AFFIRMED

 
 
 
 Lawrence M. Kasen, of Summerville, for Appellant.
 Joseph P. Cerato, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Appellant Mary Jones Mack (Wife) brought this action to set aside a deed executed by her late husband, Leroy Mack, Sr. (Father), in favor of his son from a prior marriage, Philip Mack (Son).  Wifes complaint alleged Father lacked mental capacity to execute the deed and that Son exercised undue influence over Father at the time of his executing the deed.  The Master-in-Equity found 1) no evidence Father lacked mental capacity and dismissed that cause of action and 2) no undue influence was exerted by Son over Father in the execution of the deed.  We affirm.[1]  
 
FACTS
Father purchased the property at issue on Birds Nest Road in Wadmalaw Island, South Carolina in 1980, and built a home on the property in 1988.  Father and Son lived together on the property until Wife moved in some time prior to 1999.  Because there was tension and a mutual dislike between Wife and Son, Son moved out approximately the same time Wife moved to the home.  Father made it clear to Son he did not want Son around the home because of the problems it created between Wife and Son.  Often times, when Son visited, Father called the police to remove him from the property.  During one such incident in March 2000, Father demanded, at gunpoint, that Son leave the property.  When Father married Wife later that year, Father and Son stopped communicating and Son stopped visiting the property.  There is conflicting testimony as to the duration and extent of Father and Sons estrangement, but for roughly four years the two communicated in limited circumstances and only when Wife was not present.  
In October 2003, Fathers mother died.  Father fell into depression and began to drink and lose weight.  On November 16, 2003, Father admitted himself to the Medical University of South Carolina Hospital (MUSC) complaining of excessive alcohol intake and abdominal pain.  Two days later, Father voluntarily discharged himself, and soon thereafter, he reconnected with Son. 
 
On December 26, 2003, Wife called the police to the property after Father became violent with her and began punching the walls.  The police took Father to a hospital where, after a psychiatric and substance abuse assessment, he was determined not to be suicidal.  The mental status exam indicated Fathers thought process was organized and void of any delusions, hallucinations, or paranoid ideas.  Father was subsequently released.  Three days later, Wife sought to commit Father, believing he needed medical attention and supervision.  A hearing was scheduled for January 21, 2004, to determine if Father was a chemically dependant individual in need of voluntary commitment.    
When Father learned Wife was seeking to involuntarily commit him, Father informed Son of his plan to deed the property to him.  A few days prior, on Christmas day, Father also spoke to his sister, Shirley Mae Mack Brown (Brown), of his intent to leave his property to someone in the family, and specifically of his intent to leave it to Son.  On January 14, 2004, Father, under the mistaken belief that he could sign over the original deed to Son through a notary, called Son to pick him up and take him to his notary friend, Rueben Daviss house.  Davis told Father he would need to see an attorney to execute the deed.  Son contacted his attorney, who recommended the law firm of Davidson, Wigger and Bennett.  Two days later, Father executed the deed at the law firm office.  Jim Olson, a paralegal, dealt with Father immediately after Father executed the deed.  

Father did not attend the hearing for his involuntary commitment on January 21, and died three days later on January 24, 2004.  Wife learned of the deed execution the following day and received a letter of eviction to vacate the property on January 28, 2004.  
 
Wife filed this action to set aside the deed claiming Father lacked mental capacity and Son exercised undue influence over Father at the time he executed the deed.  Son counterclaimed alleging Wife committed waste at the property.  The master denied Sons counterclaim of waste and dismissed Wifes first cause of action based on the lack of capacity of Father.[2]  Further, 
the master found: (1) no confidential relationship existed between Father and Son; (2) Son did not exercise dominion over Father; (3) even if the evidence were sufficient to shift the burden to Son, the Son rebutted the shift by showing there was no undue influence exercised over Father; and (4) adequate consideration supported the conveyance based on the totality of circumstances.  This appeal follows.
STANDARD OF REVIEW
An action to set aside a deed is equitable in nature.  Bullard v. Crawley, 294 S.C. 276, 278, 363 S.E.2d 897, 898 (1987).  In an appeal from an action in equity, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence.  Pinckney v. Warren, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001).  However, this does not require an appellate court to disregard the findings below, or ignore the fact that the trial judge was in a better position to evaluate the credibility of witnesses.  Id.  Moreover, the appellant maintains the burden of convincing the appellate court the trial judge committed error in his findings.  In re Thames, 344 S.C. 564, 571, 544 S.E.2d 854, 857 (Ct. App. 2001).
LAW/ANALYSIS
I.  Confidential Relationship
Wife argues the master erred in failing to find a confidential relationship existed between Father and Son at the time of the execution of the deed.  We disagree.
 
A deed regular and valid on its face raises a presumption of validity.  Generally, the party attacking the deed has the burden of proof.  Hudson v. Leopold, 288 S.C. 194, 196, 341 S.E.2d 137, 138 (1986) (citation omitted).  Where, however, a confidential relationship exists between the grantor and grantee, the deed is presumed invalid and the burden is upon the grantee to show an absence of undue influence.  Middleton v. Suber, 300 S.C. 402, 405, 388 S.E.2d 639, 641 (1990).  
 
A confidential relationship arises when the grantor places trust and confidence in the grantee, and the grantee exerts dominion over the grantor.  Bullard, 294 S.C. at 281, 363 S.E.2d at 900.  While a familial relationship, alone, is insufficient evidence of a confidential relationship, Hudson, 288 S.C. at 196, 341 S.E.2d at 139, a familial relationship certainly supports an argument that a confidential relationship exists.  Dixon v. Dixon, 362 S.C. 388, 398, 608 S.E.2d 849, 853 (2005).  Yet, the relationship must be one implying confidence, with some evidence that the grantor actually reposed trust in the grantee in the handling of his affairs.  Bullard, 294 S.C. at 281, 363 S.E.2d at 900.
In this case, while there was a familial relationship between Father and Son, there is little, if any, evidence that a relationship of trust and confidence existed.  There is no evidence that Son was entrusted with any of Fathers business affairs or financial matters or was ever asked to take care of any of Fathers personal matters prior to the deed transfer.  Wife asserts Sons involvement in the actual deed transfer reveals Father placed his trust and confidence with Son.  Wife suggests Sons selection, hiring, and paying of the attorneys that prepared the deed supports her assertions.  Although Son assisted in the details of the transfer, he did so at Fathers request and only after Fathers expressed decision to make the transfer.  Further, there is no evidence that Son exerted dominion over Father.  In his order, the master found Father was an independent person aware of his actions and the consequences of his actions at the time of execution of the Deed. Accordingly, the master found Son did not exert dominion over Father and held no confidential relationship existed between Father and Son.  We hold a preponderance of the evidence supports this finding.
II.  Undue Influence
Regardless of whether there existed a confidential relationship, Wife argues the master erred in failing to find Son exerted undue influence over Father.  We disagree.
 
Absent a confidential relationship, the party challenging the deed must show undue influence was brought to bear upon the conveyance such that the grantors will was overborne by the grantee.  Dixon, 362 S.C. at 398-99, 608 S.E.2d at 854.  The Supreme Court has described the nature of undue influence as the kind of mental coercion which destroys the free agency of the creator and constrains him to do things which are against his free will, and that he would not have done if he had been left to his own judgment and volition.  Id. (citing Russell v. Wachovia Bank, N.A., 353 S.C. 208, 217, 578 S.E.2d 329, 333 (2003)).[3]  Further, the challenging party is required to show the grantor was unquestionably susceptible to undue influence as a result of [his] physical and mental condition or for some other reason, and  clear evidence of opportunity and disposition by the grantee . . . to influence the grantor must be present.  Bullard, 294 S.C. at 281-82, 363 S.E.2d at 900. 
 
We find no evidence in the record that Fathers free will was ever overcome.  The master found that Father acted of his free will up to the time of his death and was aware of the consequences of his actions at the time of the execution of the Deed.  The record also indicates that Father, by his own motivation, decided to convey the property to Son, his only child, in an attempt to keep the property in the Mack family.  Additionally, the record is devoid of evidence indicating Father was susceptible to undue influence or that Son had the opportunity or disposition to influence Father.  Wife claims Fathers alcoholic and weakened mental and physical condition placed him in a more susceptible position to Sons exertion of dominion over his affairs.  While there is evidence that Fathers drinking increased and his health deteriorated from October 2003 until his death on January 24, 2004, the master noted that Fathers mental acumen remained steady and he was an independent person with a strong will despite poor health in his final days.  Further, Olson, the paralegal who helped with the deed, testified that Father was under no duress at the time of executing the deed.  Thus, we find the evidence insufficient to establish undue influence. 
 
III.  Admission of Testimony 
Wife next argues the master erred in admitting trial testimony of Brown and Olson as to Fathers wish to leave his property to Son over Wifes hearsay objection.[4]  We disagree.  
Hearsay is an out of court statement offered to prove the truth of the matter asserted.  Rule 801(c), SCRE.  The rule against hearsay prohibits the admission of such a statement unless an exception to the rule applies.  Rule 802, SCRE.  Rule 803(3), SCRE, provides that a statement of the declarants then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design) is excluded from the hearsay rule. 
 
Wife contends the state of mind exception does not apply to the testimony of Brown and Olson because both were offered to prove the truth of the matter, namely, that Father was considering leaving his property to Son.  We disagree with Wifes assertion. 
 
First, the testimony of Olson is non-hearsay because it is not offered for the truth of the matter, but rather to prove Fathers capacity at the time of the execution of the deed.  Thus, Olsons testimony was admissible as non-hearsay.  
 
Further, Browns testimony reveals that Father made statements to her that indicated Fathers then existing state of mind.  In December 2003, less than a month before Father executed the deed, Father told Brown of his plan to leave the property to someone in the family.  Father initially stated to Brown he was going to leave the property to Son, but asked if she would want it if Son did not want the property.  These statements show that, at the time he made them, he intended to keep the property within the Mack family.  Father made the statements to Brown before he executed the deed, and they show how he intended to subsequently dispose of his property.  Therefore, pursuant to the state of mind exception, Browns testimony was admissible and relevant to the issue at hand. 
 
IV.  Reimbursement for Contributions 
Lastly, Wife asserts that, if this court were to affirm the masters rulings, equity requires the court remand the case on the issue of reimbursement for contributions made by Wife to the property before and after Fathers death.  We disagree.
 
At trial, Wife attempted to testify as to monetary amounts she paid for the general upkeep, maintenance, and improvements to the property.  Sons counsel objected on the basis that it was outside of the scope of Wifes complaint and that she should not be permitted to amend her pleadings to conform to objectionable testimony at such a late stage in the proceeding.  The master allowed Wife to make an offer of proof through which the master would later rule on the admissibility.  After Wifes testimony the master specifically gave Wife the opportunity to make a motion to modify the pleadings to conform to the testimony.  Wife made no such motion and the master made no ruling on the admissibility of Wifes testimony regarding her monetary contributions to the property.  Accordingly, we find this issue is not adequately preserved for review. See Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that an issue must be raised to and ruled upon by the trial court in order to be preserved for appellate review).
CONCLUSION
We find no confidential relationship existed between Father and Son at the time of the execution of the deed.  Absent a confidential relationship, we hold Wife failed to present sufficient evidence to establish undue influence.  Further, we hold the master did not err in admitting trial testimony as to Fathers wish to leave his property to Son.  Lastly, we find Wifes request to remand the case on the issue of reimbursement for contributions she made to the property is not adequately preserved for our review.
 
Therefore, the Master-in-Equitys ruling is 
AFFIRMED. 
STILWELL, SHORT, and WILLIAMS JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] Respondent did not appeal from the masters denial and, therefore, it is the law of the case.   Sims v. Hall, 357 S.C. 288, 293 n. 2, 592 S.E.2d 315, 318 n.2 (Ct. App. 2003) (finding an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal).  Likewise, the Appellant did not appeal the masters dismissal of the action based on lack of capacity and, therefore, it is the law of the case.  Id.
[3] The supreme court acknowledged the cited case dealt with a will, but found no reason such a discrepancy should change its analysis.  
 
[4] Wifes counsel made timely objections to the testimony of both Brown and Olson; however, the master admitted the testimony without any specificity as to the basis for his ruling.